Pa. 226, 228, it was said by Judge GIBSON, who wrote the court's opinion in both cases: "But possession taken in mutual mistake of right was held, in Comegys v. Carley, 3 Watts 280, not to be adverse." As already stated, in the present case appellant received a share of the rents because of the mistaken advice of counsel.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.

---

# Bennett, Appellant, v. Frederick R. Gerry Co. et al.

*Mechanic's lien—Architect—Subcontractor—Lump sum—Act of June 4, 1901, P. L. 431.*

1. While the Act of June 4, 1901, P. L. 431, gives a right to an architect to file a claim as contractor for services as such to the owner, he has no right to file such a claim as a subcontractor.

2. An architect has no right to couple services for which he has no right to file a claim, with other services as to which he may have a right to file a claim, and charge a lump sum for all the services on a percentage basis on an estimated value of cost of construction.

3. A mechanic's lien filed by an architect is invalid where services in drawing plans and specifications are mingled with services in superintending construction and charged as a lump sum on a percentage based on cost of construction.

Argued March 24, 1922. Appeal, No. 338, Jan. T., 1922, by plaintiff, from order of C. P. No. 3, Phila. Co., March T., 1921, No. 3395, M. L. D., making absolute rule to strike off mechanic's lien, in case of Thomas F. Bennett v. Frederick R. Gerry Co., a corporation contractor, and Dr. A. Reed Cushion Shoe Co., owner or reputed owner. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Rule to strike off mechanic's lien.

FERGUSON, J., filed the following opinion:

This is a rule to strike off a mechanic's lien claim. The claim as filed is for the amount alleged to be due the plaintiff for services rendered as architect and engineer [who contracted with the general contractors for the building, and, therefore, filed the lien as a subcontractor]

in the preparation of the specifications, plans, drawings and general supervision of the construction of a certain building. After rules were taken on behalf of the owner and the contractor to show cause why the claim should not be stricken off, a rule was taken by the plaintiff to amend the claim. The proposed amendment alleges the plaintiff was employed by the contractor to "prepare all of the detail plans, drawings and specifications for the erection and construction" of the building; "to make and secure all of the contracts for work and labor to be done and materials to be furnished by subcontractors......and to act as engineer and general superintendent of the erection......actually superintending and supervising the erection and construction of said structure, not only with respect to work done by claimant, but also with respect to work done and materials furnished by subcontractors."

It will be observed that the proposed amendment eliminates the word "architect," which appears in the claim as filed. With respect to this it must be said that if it is proposed by the amendment to allege that the services rendered were services other than those ordinarily rendered by an architect the change would be too late, and the amendment could not be allowed. As we read the proposed amendment, however, we do not see in it more than an amplification of the original averment. With the exception of that part of the amendment which refers to the work of superintending the work "done by the claimant," which is unintelligible, all of the services rendered are those which are ordinarily rendered by an architect. It does not alter the character of the claim by the omission of the word "architect." The name by which a subcontractor designates himself is unimportant.

Assuming that we are right in this we have to determine whether or not the rules to strike off the claim must nevertheless be made absolute. While the Act of June 4, 1901, P. L. 431, gives the right to an architect to file a claim as a contractor for services rendered as such to the owner, he has no right to file such a claim

as a subcontractor. It is argued, however, that, since the Act of 1901 gives to a subcontractor who superintends construction the right to file a claim, that right carries with it all the other services rendered in connection therewith. We cannot agree with this view. There is nothing in the claim which gives any [sufficient information] as to what portion of the service rendered was for superintending construction [the allegation in the claim being that the compensation of plaintiff was fixed by a special contract whereby it was agreed he should be paid for all his services "a sum equal to six per cent of the total cost of construction"]. The act does not give the right to an architect to file a lien for services. That part of plaintiff's services rendered in preparing plans and specifications could not be regarded as a part of the work of superintending construction, neither can service rendered in securing contracts from subcontractors come under the head of superintending, and, as above stated, services rendered in superintending the work of the claimant himself would be an anomaly in a mechanic's lien claim. The plaintiff has no right under the act to couple important services, for which he has no right to file a claim, with other services as to which he may have a right to file a claim and charge a lump sum for all the services upon a percentage basis on an estimated value of cost of construction. The owner of the building is entitled by law to have notice in the claim as to the services that were rendered, and as to the value of those services. If this plaintiff has a right to file a claim for services rendered as superintendent, it is his duty to show the days when he rendered the services and [also] the value of the services by express or implied contract. Nothing of the sort [sufficiently] appears in this claim. It is easy to infer that a great deal of the time during which the claimant alleges the services were rendered [in superintending] was spent in......making and securing contracts with subcontractors. This time could not be regarded as time spent in superintending. The information thus withheld is of the utmost impor-

tance to the owner, and since it has been withheld the claim must be held to be fatally defective.

The rule to strike off is made absolute.

Plaintiff appealed.

*Error assigned* was order, quoting it.

*Robert Mair*, with him *Nathan M. Griffith, Wayne P. Rambo* and *Ormond Rambo*, for appellant, cited: Rush v. Able, 90 Pa. 153; Dyer v. Wallace, 264 Pa. 169; Prouse v. Stocker, 74 Pa. Superior Ct. 55; Bank of Penna. v. Gries, 35 Pa. 423; St. Clair Coal Co. v. Martz, 75 Pa. 384; Price v. Kirk, 90 Pa. 47; McCristal v. Cochran, 147 Pa. 225.

*L. Pearson Scott*, of *Mowitz, Solis-Cohen, Scott & Gerstley*, with him *George A. Maene*, and *Roberts, Montgomery & McKeehan*, for appellee, cited: Sauer v. Doerfer, 22 Pa. Dist. R. 39; Price v. Kirk, 90 Pa. 47.

PER CURIAM, April 17, 1922:

The order appealed from in this case is affirmed on the opinion of the court below.

---

## Backus, Appellant, v. Philadelphia Rapid Transit Co.

*Negligence—Street railway—Crossing in front of moving car—Contributory negligence.*

1. In an action against a street railway company, for personal injuries, a judgment on a verdict for defendant will be sustained where the evidence for plaintiff was in effect that she started to cross the track of defendant, when a car which struck her was standing 85 feet away and started without warning, while defendant's proof tended to show that plaintiff started to cross when the car was moving, that she was looking away from the approaching car, and was struck before she had left the tracks.

2. In such case, the appellate court must read the evidence in the light which best sustains the verdict.

Argued March 24, 1922. Appeal, No. 364, Jan. T., 1922, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1920, No. 4737, on verdict for defendant, in