STATE OF MISSOURI at the relation and to the use of A. J. ALPORT, Appellant, v. BOYLE-PRYOR CONSTRUCTION COMPANY, a Corporation, R. W. CRIMM, as the Acting President, J. J. PRYOR and R. W. CRIMM as the Last Board of Directors or Managers and as Trustees of said Boyle-Pryor Construction Company, a Corporation, and HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation.—No. 38765.—180 S. W. (2d) 727.

Division One, June 5, 1944.

*Taylor, Mayer, Shifrin & Willer* for appellant; *Charles P. Williams* of counsel.

1064

*Igoe, Carroll, Keefe & Coburn* and *Roberts P. Elam* for respondent.

CLARK, P. J.—On July 2, 1936, the State of Missouri accepted the bid of Boyle-Pryor Construction Company, a corporation, amounting to more than two million dollars, for the construction and repair of certain buildings at the state penitentiary. Prior to that time the construction company had an arrangement with appellant whereby he had made an estimate of the cost of the labor and material for the job, negotiated with materialmen and subcontractors and had done all research and work involved in preparing the bid. Under this verbal understanding appellant was to receive no compensation for this preliminary work unless the contract should be finally awarded to the construction company, in which event he was to be employed to supervise the work of construction at a monthly salary and was also to receive a share of the profits. After the bid was approved a dispute arose between the State and the Federal government (which had made a grant in aid) as to the plans and specifications. Appellant assisted in adjusting this dispute which lasted for several months. In the meantime costs of material and labor

had risen and after negotiations, in which appellant participated, the construction company was permitted to increase the amount of its bid. During all this time appellant received no compensation, but was reimbursed for expenses. On April 22, 1937, the construction company entered into a contract with the State and gave two bonds to the State, a "performance bond" and a "labor bond", both being signed as surety by the Hartford Accident and Indemnity Company. (Respondent). The "labor bond" secured payment for "all labor performed and services rendered in the prosecution of the work provided for in said contract."

On May 26, 1937, the construction company entered into a contract with appellant which, among other provisions, contained the following:

"1. First Party hereby employs Second. Party to manage, supervise and direct for First Party all the business and construction operations required in connection with the contract for the construction of said Project. . . .

"4. For such services second party shall receive a salary of Five Hundred dollars ($500.00) per month. . . .

"6. As further compensation, and for and in consideration of the work done by Second Party in preparing estimate of cost of said work and in negotiating subcontracts therefor, First Party agrees to pay Second Party an amount equal to ten (10) per cent of the total profits made by First Party on said Project."

Paragraphs 8, 9, and 10 of the contract provided in substance that upon the death of appellant his salary should cease or, upon his disability to the extent of being unable to supervise. the work, his salary should cease during such disability, and the construction company would have the right to hire another supervisor at a salary of not to exceed $500.00 per month which should be regarded as an item of cost. But upon the death or disability of appellant the construction Company would pay to him, or to his heirs, etc., the ten per cent of the total profits, the same as if he had. been fully able to supervise the work.

Appellant performed his duties as supervisor and received his salary of $500.00 per month up to July, 1939. He also received $7,676.59 on his share of the profits. Final payment was made by the State to the construction company in 1941. Thereafter, the construction company tendered to appellant the sum·of $8,711.72, which it claimed was the balance due on the ten per cent provision. This was refused by appellant who claimed and demanded the sum of $15,073.28.

For this latter sum appellant sued the construction company and respondent on the "labor bond." At the close of the evidence the court directed a verdict for respondent (Hartford Accident and Indemnity Company) and also directed a verdict in favor of appel-

lant against the construction company for the full amount sued for. No appeal was taken by the construction company. Its charter has been forfeited and it seems to be insolvent. This appeal is from the judgment in favor of the respondent Indemnity Company.

Appellant has devoted considerable space in his brief, with citation of numerous authorities, in announcing rules which should govern us in construing the contracts involved herein. These suggested rules of construction are conceded to be correct by respondent and it is unnecessary to discuss the authorities supporting them.

Our decision must rest upon a construction of the "labor bond", and appellant's contract of employment. Incidentally, we are required to pass upon the trial court's action in rejecting testimony offered by appellant in aid of construing the contracts and upon the propriety of the court's action in directing a verdict in favor of one defendant and against the other.

The "labor bond", upon which this suit is based, secured the payment of "all labor performed and services rendered in the prosecution of the work provided for in said contract", meaning the contract between the construction company and the State of Missouri. The work provided for in that contract related only to future work in the construction and repair of the buildings and did not relate to any work previously done by the construction company or its employees in making the necessary research and negotiations to prepare the bid.

Turning to appellant's contract of employment, paragraph 1 clearly employs appellant to perform *future* services in supervising construction and does not refer to any services previously performed. Paragraph 4 provides a salary of $500.00 a month for such future services. Thus far there is no controversy.

Appellant says that the provision for sharing the profits, contained in paragraph 6, is also compensation for future services. We do not so read it. Certainly most, if not all, the services mentioned in paragraph 6 had been performed before the contract was executed. Paragraphs 8, 9, and 10 indicate that all of such services had been so performed for they provided that appellant should be entitled to receive the entire ten per cent even if he should be unable, through death or disability, to perform any part of his duties as supervisor of construction. Of course he could not collect his share of the profits until the work was completed and the amount of profits ascertained, but his right to such share did not depend upon his supervising construction even for one day. Also, in the event of appellant's death or disability, his successor would get only a salary up to $500.00 per month for the entire work of supervising construction and would get no part of the ten per cent share in the profits.

This construction is sustained by appellant's own testimony. He recites in detail the work he did in preparing the bid and procuring

its acceptance and says: ''during all this period of time, while I had no definite written agreement, there was a tacit understanding that I was to share in the profits and would get a salary of so much a month. There was no understanding of a definite amount.'' ''The understanding was that if the contract was not awarded to them I was not to receive anything.'' He further testified that he ''was willing to take a gamble'' on his time in estimating the costs and if the construction company got the contract he would have a good job.

To us it seems clear that appellant's contract entitled him to a salary of $500.00 per month for all services to be performed by him thereafter in supervising the building operations called for by the contract between the construction company and the State; and that he was to receive a share of the profits for his services previously rendered under his contingent verbal agreement. His contract was valid as between appellant and his employer, but respondent agreed to secure payment only for services in carrying out the contract between the construction company and the State, and did not agree to stand responsible for payment for services rendered by appellant or any other employee of the construction company in procuring the contract with the State.

Since at least a part of the services mentioned in paragraph 6 were previously rendered and not covered by the ''labor bond,'' we cannot separate them and adjudge liability for any part.

For construction of similar contracts see: Look v. City of Springfield, 292 Mass. 515, 198 N. E. 661; Libbey v. Tidden, 192 Mass. 175, 78 N. E. 313; Adler v. World's Pastime Exp. Co., 126 Ill. 373, 18 N. E. 809; Bennett v. Frederick R. Gerry Co., 273 Pa. 585, 117 Atl. 345.

Appellant offered as a witness the attorney for the construction company who drew the contract, and attempted to explain it by him. This was excluded on the objection that it was an attempt to vary the terms of the contract by parol testimony. Appellant then offered to prove by the witness that the consideration for the services to be rendered under the contract was $500.00 per month *and* ten per cent of the profits; that the words ''the work done by Second Party in preparing estimates of cost'' were put in to prevent plaintiff from making any claim for work done prior to the signing of the contract, and had nothing to do with the consideration for services to be rendered under the contract. This offer of proof was refused and appellant assigns error.

Appellant says that actual consideration may always be shown by parol evidence, citing Williston on Contracts, Vol. I, Sec. 115B.

But here the actual consideration was stated in the contract, and appellant is trying to show by parol evidence that the actual consideration was for services different from what the written contract says. In other words, appellant is trying to defeat the legal effect

and operation of a written contract by parol evidence. This cannot be done. [32 C. J. S., page 887, sec. 956; Burk v. Walton, 337 Mo. 781, 86 S. W. (2d) 92, l. c. 96.] Here the suit is between the parties to the contract. No fraud, accident or mistake is alleged. The contract is unambiguous and parol evidence is not admissible to vary its terms. Besides, appellant's offer of proof itself shows that appellant had, or might make, a claim for previous services and that the ten per cent provision was put in to take care of that very contingency.

Appellant says that the court erred in directing a verdict in favor of one and against the other defendant. This contention is technically correct. The court should have directed a verdict in favor of *both* defendants; for, while the construction company was liable to appellant in a proper suit, neither it nor the respondent was liable in this suit because appellant's claim is not covered by the "labor bond" upon which the suit is based. The judgment against the construction company is now final since no appeal was taken from it, and it is unnecessary for appellant to bring another suit against that company. The error is in plaintiff's favor. Certainly it cannot affect the rights of respondent.

Finding no prejudicial error, the judgment is affirmed. All concur.