NATALE PRESTIGIACAMO, RESPONDENT, v. AMERICAN EQUITABLE ASSURANCE COMPANY OF NEW YORK, A CORP., APPELLANT.—221 S. W. 2d 217.

Kansas City Court of Appeals. Opinion delivered April 4, 1949.

840

*Alvin C. Trippe, Hale Houts* and *Hogsett; Trippe, Depping & Houts* for appellants.

*C. W. Crossan, Robert J. Coleman* and *Harry L. Jacobs* for respondent.

842

SPERRY, C.—Plaintiff sued defendant, a foreign insurance corporation, for the full face amount of a $2500 fire insurance contract on the theory that the policy contained a latent ambiguity. The property insured was described as two buildings, each insured for $1250, whereas, plaintiff contends, the property is really but one building, which fact the agent knew, and that he agreed to so insure it. The case was tried to the court, without a jury, and judgment was for plaintiff for $2500, and for penalty and attorneys' fees of $500. Defendant appeals.

The property fronts 100 feet on the south side of East 12th Street, in Kansas City. The policy was in evidence and on the outside front jacket the following appears: "Property Bldg. 1511-1513 and 1515-17

East 12th $2500.00." On the first page of the policy, on the first line, appears the following: "Amount $2500.00 Rate ( .82/2.05 (1.91/4.775 Premium $85.30." Attached to said front page is a sheet designated: "Mercantile Building Form," on the face of which appears the following: $1250.00 on each of the two, three story composition roof brick buildings * * * situated 1511-13 East 12th Street and 1515-17 East 12th Street City of Kansas City State of Missouri."

Plaintiff acquired the property in 1921. An architect testified to the effect that the lines of the roof and foundation indicate that it is one single building, constructed at one time; that the second and third floors are occupied as apartments; that the first floor is occupied by a number of store rooms, a portion of the basement being used by the occupant of the store room over it; that the basement is one basement, in that the separate compartments thereof communicate and open into each other; that the entire building is heated by one furnace; that there is no solid fire wall that runs from the floor of the basement to the roof; that in about the center of the first floor front there is a barber shop, extending to the back of the building, which would be bisected, or nearly so, if a fire wall were built from the basement to the roof through the center of the building; and that this barber shop bears the street number 1513½, which number is not mentioned in the policy.

Mike Prestigiacamo testified that plaintiff, his father, expects to will this property to him and to his brother; that he looked after one side of the property and his brother the other side; that each collected rents and attended to repairs on his respective side of the property; that the cost of insurance was shared by them; that from the income of the property they paid expenses, gave plaintiff $30 per month, and kept the remainder; that a Mr. Bennett, employed by A. P. Nichols Company, the insurance agency which had written the insurance on the property before witness had anything to do with its management, came to see him, at his store in the building, and asked about writing a new policy. Over defendant's objection he was permitted to testify to the following: that he called his father by telephone and his father said to have a $5000 policy written; that he told Bennett what his father said and that Bennett asked if it was to be written half on the east building and half on the west; that he asked his father about that matter; that his father said that it was one building and that he wanted the policy so written; that he told Bennett what his father said; that Bennett said that it could not be done because there were two buildings and that the Missouri Inspection Bureau had it so mapped, listed, and rated; that his father told him to show Bennett through and over the building, which he did; that they went through the basement and saw the openings therein, and went onto the roof; that Bennett then agreed that it was, in

fact, one building instead of two; that Bennett proposed that they go to the office of the Missouri Inspection Bureau, (which is an agency existing for the purpose of rating insurance risks), and there procure a re-rating of the building, to make the same conform to the actual facts; that they went to said office and were unable to procure an interview immediately; that witness was unable to wait and that Bennett told him that he need not wait, that it was one building, that he would see to the matter and would write the policy as a single risk on one building; and that witness departed.

Witness further stated that there was, at that time, a mortgage against the property, same being held by the Merchant's Bank; that some time after the above conversation occurred, witness received a statement for payment of the insurance premium; that he went to the bank and requested that he be shown the policy; that the attendant handed to him two policies, one of which was the policy here sued on, and the other a policy for a like sum, issued by Fireman's Insurance Company of Newark, New Jersey, through the same agent; that he looked at the front outside jacket of each policy and noted that the amount of each was $2500 on property located at 1511-13 and 1515-17 East 12th Street; that he made no further examination of the policies; that he did not know, until after the fire, that each of the policies purported to insure two separate buildings for $1250 each, instead of one building for $2500.

It was agreed that the total damage to the property far exceeds the sum of $5000, of which all but $41.69 occurred in that portion of the property known as 1511-13 East 12th Street; and that $41.69 damage occurred in that portion known as 1515-17 East 12th Street. No damage occurred in the barber shop, No. 1513½, a part of which room was located on either side of a line dividing 1513 and 1515.

Plaintiff made demand for the full amount of the loss under the policy, that is $2500. Defendant offered to pay $1250, in full settlement of the damage to what it calls the building located at 1511-13 East 12th Street, claiming that to be the full amount of its liability under that portion of the policy; and it offered to pay $20.85 for damages occurring at 1515-17 East 12th Street.

Defendant offered the testimony of Mr. Gill, of the Missouri Inspection Bureau. He stated that the bureau is recognized under the statutes and by the Department of Insurance as the authorized agency for the purpose of determining and publishing rates to be charged by fire insurance companies on property such as this; that according to maps and records, on file and kept by the bureau, the property herein was, for insurance purposes, two buildings, one at 1511-13 and the other at 1515-17, on March 9, 1939, when this policy was executed; that it had been so rated for many years prior thereto; that on December 12, 1940, the bureau corrected its records and listed the property as one single building because it was learned that no fire

wall separates one part of the structure from the other; that a blanket policy could have been written, when this policy was issued, covering the property as one building but a higher rate would have attached.

Defendant's counsel stated, during the course of the examination of the witness, that if defendant had written a $5000 policy on the property as one building, without attaching a blanket coverage form and charging a higher rate than is here charged, it would be compelled to pay the full $5000 loss, if one occurred, and be subject to a fine, under the provisions of the statute.

Mr. Bennett testified that his aunt constructed the building which is the subject of the insurance contract; that A. P. Nichols Company the insurance agency by whom he was employed, had written the insurance on it for many years; that the investment company of the same name and management, had carried a mortgage on it prior to the mortgage that was carried by the Merchant's Bank at the time of the fire; that the structure had always been insured as two buildings because so rated by the Missouri Inspection Bureau; that he called on Mike Prestigiacamo, at his store in the building, to see if he could write another policy; that the Prestigiacamos requested $5000 · of insurance on the property, as one building; that he told them he could not so write the insurance because it was rated as two buildings; that he did not, at that time, go through the basement and on the roof, although he had been on the roof on another occasion; that he and Mike went to the office of the bureau to demonstrate to Mike that it was there listed as two buildings; that they talked to some one there and Mike departed, agreeing that it might be written as two buildings; that he did not tell Mike that he would write the policy as one building; that defendant furnished its policy forms to A. P. Nichols Company, which the agent filled out, countersigned and delivered; that the information contained on the outside front of the policy is a summary of its contents, and is for the information of insured; that he prepared a memorandum, which was in evidence, of insurance to be written, showing the cost thereof, and left same with plaintiff; that he did not state therein that the insurance was to cover two buildings.

Since the case was tried to the court, a jury having been waived, our review will be as in equity, Sutton v. Gilbert, 193 S. W. 2d, 928, l. c. 929; but the trial court's finding on issues of fact may not be disturbed on appeal unless clearly erroneous, Johnson v. Frank, 191 S. W. 2d, 618, l. c. 621.

Defendant contends that the terms of coverage were clear and unambiguous, to-wit: $1250 on each of the two, three story buildings, one located at 1511-13 and the other at 1515-17 East 12th Street; and that the court erred in admitting testimony regarding oral negotiations had with defendant's agent, Bennett.

It is settled law that all negotiations are merged into the written

contract, and parol evidence is incompetent to vary or contradict its terms. Alport v. Boyle-Pryor, 180 S. W. 2d, 727. That principle applies to insurance contracts as well as others.

The writing in the coverage clause of the policy is clear and unambiguous, but when the words used are applied to the physical subject matter of the contract, it becomes apparent that there is an ambiguity.

Parol evidence may not be resorted to, or heard, to explain or remove an ambiguity which is patent. Meinhardt v. White, 107 S. W. 2d, 1061, 1. c. 1063; Brient v. Garrison, 150 Mo. 655, 1. c. 667. A latent ambiguity exists where a writing presents no ambiguity, on its face but, when it is sought to apply the words used to the subject matter, it is found that they do not correctly describe or clearly apply to it. Meinhardt v. White, supra, 1. c. 1064.

"Ambiguities in written instruments are of two kinds. They are either patent or latent. A patent ambiguity is one arising upon the face of the instrument without reference to the described object while a latent ambiguity is one developed by extrinsic evidence, where the particular words, in themselves clear, apply equally well to two different objects. * * * A latent ambiguity may be one in which the description of the property is clear upon the face of the instrument, but it turns out that there is more than one estate to which the description applies; or it may be one where the property is imperfectly or in some respects erroneously described, so as not to refer with precision to any particular object. * * * If such an ambiguity develops, extrinsic evidence is admissible to show the real intent of the parties. * * * The court must determine whether the language of the contract aptly reads upon its subject matter or whether it is latently ambiguous. This question must first be determined by the court in order to determine the necessity for parole evidence of intent and the submission of the disputed issues of fact to the jury. Queens Ins. Co. of America v. Meyer Milling Company, supra." University City Missouri v. Home Fire & Marine Ins. Co., 114 Fed. 2d, 288, 1. c. 295, 296.

Going to the location given in the policy, one would not find two buildings, one numbered 1511-1513 and the other numbered 1515-1517, East 12th Street. He would not find two complete buildings, each with stationary heating apparatuses as mentioned in the policy. Instead, he would find one building, one integral structure. He would find one part of that building on ground to which numbers 1511-1513, had been assigned, and another part on ground to which numbers 1515-1517, had been assigned. He would find one building, parts of which carried the numbers 1511-1513, 1515-1517; but he would also find that other parts of said building bore the numbers 1511a, 1513½, 1515a and 1517½ as shown by defendant's exhibits, and other evidence. He would find that part of the building numbered 1511-13

to be not useable as a separate unit because the heating apparatus is under that portion of the building bearing numbers 1515-1517. He would find that any of the numbers appearing in the policy fits a *part* of a building located on East 12th Street; and that any one of said numbers fits another thing, to-wit, the building as a whole. He would find in the policy a latent ambiguity. Queens Insurance Company of America v. Meyer Milling Company, 43 Fed. 2d, 885, l. c. 887.

We hold that it was proper for the court to hear parol evidence in order to determine, in the first instance, whether a latent ambiguity existed and, having discovered thereby that such was true, it was proper to permit the introduction of further parol evidence for the purpose of discovering the true intent of the parties. Hardy v. Matthews, 38 Mo. 124; State ex rel. v. Trimble, 301 Mo. 146, l. c. 152; 32 C. J. S. page 915, 916, par. 961.

On the latter question, the testimony of Bennett and Mike Prestigiacamo was in sharp conflict only as to what was *finally* said and done. Both witnesses say that Bennett came to the store to see about writing a new policy on the property; that plaintiff insisted that it consisted of one building and demanded that the policy be so written; that Bennett claimed that it consisted of two buildings and that it was so described on the records of the Inspection Bureau. Thus far the testimony of these two witnesses is in accord. From this point, however, they differ. Mike testified that plaintiff suggested that he show Bennett over the property which, he says, he did, going through the basement and onto the roof. Bennett denies that he inspected the property, although he stated that he had been on the roof of the building on another occasion, without stating when or for what purpose. He also admitted making a written memorandum of the amount and cost of the insurance and giving it to Mike, and said that he did not therein make mention that it was to be written on two buildings. Mike stated that after they had gone through the property, Bennett announced that there was, in fact, one building, and that he invited Mike to accompany him to the office of the bureau where they would straighten the matter out. Bennett admitted that he invited Mike to go to the office but said that it was for the purpose of showing him the records and thereby proving that there was, in fact, two buildings. Mike says that he had to leave for another appointment before they saw any one in authority at the office and that Bennett told him to go, that there was but one building, that he would see that it was so shown on the records, and that he would write the policy accordingly. Bennett stated that they inspected the records and that Mike was satisfied with having the policy written as it was. The trial court, by his findings and judgment, resolved the conflict in evidence thus presented in favor of plaintiff. We cannot say that his findings and judgment on this fact is clearly erroneous.

The evidence justifies a finding to the effect that the parties agreed that the policy be written on the property as one building. That being the contract agreed on, it is not worth while to speculate on why the policy was not so written.

It is claimed that plaintiff, not having promptly and thoroughly examined the policy and complained thereof, may not now contend that the contract, as written, is different from that agreed on. Defendant did not plead such a defense. However, plaintiff himself is shown to be an aged Italian, in poor physical condition, who speaks practically no English. According to all of the evidence defendant's general agent had been familiar with this property for a great many years and, according to Mike's testimony, knew that it was one building. He had agreed to have the bureau records corrected and to write the policy as one building. When Mike inspected the policy, the notation on the outside front cover, having been made for the purpose of informing insured of its contents, he found it to be, apparently, as they had agreed. Even had he inspected the coverage clause, it is doubtful if he would have been informed of what defendant now contends. We say this in view of all of the negotiations had with the agent relative to the character of the property, of their final agreement with relation thereto, and of the summary as well as the coverage clause. "Laches cannot be invoked to defeat justice, and it will be applied only where the enforcement of the right asserted would work injustice." Earley v. Automobile Insurance Company, 144 S. W. 2d, 860, 1. c. 863. This contention will be denied.

Defendant contends that classifications and rates published by the Missouri Inspection Bureau are the only legal classifications and rates defendant is permitted to use, citing State v. American Insurance Company, 200 S. W. 2d, 1. It contends that it would have been unlawful for it to have written the policy as one building, the property then being classified and rated by the bureau as two buildings; that it is to be presumed that defendant's agent did not intend to or agree to so write the policy as it is presumed that he did not intentionally violate the law. It also argues that defendant's agent did not agree to insure the property as one building for the reason that the evidence tends to show that, in such case, one rate should have been charged, instead of two, which would have resulted in a higher premium. It cites Pilgrim Laundry & Dry Cleaning Company v. Federal Insurance Company, 140 Fed. 2d, 191.

No doubt these arguments were presented to the trial judge and were, by him, considered and weighed, together with other evidence. We cannot say that his findings on the facts are clearly erroneous merely because he did not give this branch of the evidence more weight. Evidence of the difference in rates was admissible as having a bearing on the intention of the contracting parties. Indiahoma Refining Company v. National Fire Insurance Company, 242 S. W. 710. But

such evidence is not controlling. The weight and importance to be given it was a matter for the trial judge to determine.

The trial court adjudged penalties for vexatious refusal to pay, in the amount of $250, and attorneys' fees in a like sum. Defendant challenges this action. Defendant's general agent had written insurance on this building for many years prior to the writing of the policy in suit. They knew that A. P. Nichols Investment Company had held a mortgage on it. Mr. Bennett's aunt constructed the building and he had been more or less familiar with it since his youth. He knew that plaintiff wanted a policy on it as one building, and was shown through the basement and went onto the roof in order to learn its character. He agreed that it was one building and that he would write the policy as such. No one now contends that it is not one single building and risk. According to plaintiff's evidence, defendant's agent knew all of these facts, and the trial judge found that he did know said facts and agreed to write the policy as a single building. In view of the evidence, assessment of penalties and attorneys' fees was within the discretion of the trial judge. Murray v. Niagara Fire Insurance Company, 265 S. W. 102, 1. c. 104.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. *Bland, J., Dew, J.,* concur; *Cave, P. J.* not sitting.