**LAKE DEVELOPMENT ENTERPRISES, INC., a Corporation, Plaintiff-Appellant,**

v.

**Alfred F. KOJETINSKY and Mrs. Alfred F. Kojetinsky, Defendants-Respondents.**

**No. 32145.**

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

Earl R. Blackwell, Hillsboro, for plaintiff-appellant.

James K. Pendleton, Daniel P. Reardon, John H. Martin, St. Louis, for defendants-respondents.

BRADY, Commissioner.

Plaintiff brought suit to enforce the provisions of a warranty deed granting certain lots in a subdivision to the defendants. The trial court entered judgment for defendants. We will hereafter refer to the defendants in the singular.

■ The rules of review attendant upon a case of this nature are well known. We are to hear the case de novo, and, giving due deference to the trial court's findings where matters involving the credibility of a witness are involved, reach our own conclusions as to the facts. Selsor v. Shelby, Mo.App., 401 S.W.2d 169.

The petition alleged plaintiff's corporate existence; that both parties owned certain lots in Lake Tishomingo, a subdivision located in Jefferson County, Missouri; the adoption of a general plan of development for said subdivision which led to the insertion in the deed to the defendant and to all purchasers of certain restrictions governing the use of land in the subdivision among which is the provision later set forth; that defendant's property and all the lots in the subdivision were thereby impressed with an "equitable servitude" for the benefit of the grantees of all the other lots therein; the use of each lot, except defendant's property, in a manner consistent with the restrictions; the violation of the restriction above set out by the defendant; plaintiff's request to the defendant to cease such violation, the defendant's refusal to do so and his threatened continuation of it; plaintiff's threatened irreparable damage and his lack of an adequate remedy at law. Plaintiff prayed for injunctive relief restraining defendant from continuing to maintain this structure on the parkway.

In those parts pertinent to his appeal, defendant's answer alleges that plaintiff acquiesced in the erection of the building and now is estopped from seeking its removal; laches; and that the restrictions have been abandoned by plaintiff's failure to enforce this and other restrictions found in the deed. Defendant also based his defense upon the theory the restrictions were unjustly enforced in a discriminatory manner in that violations by others were allowed while his was made the result of this action.

The provision of the deed specifically involved reads: "3. There will be no restrictions as to cost of any residence but complete architect's plans and specifications must be submitted for the approval of the Lake Development Enterprises Company, Inc., before building operations are started. No residence shall be wholly or partly covered with tar paper, metal or canvas, and no tent house or shack shall be on said lot. No building without a painted or otherwise finished outside surface shall be on said lot unless of log or slab construction. No Auto Trailer or Movable Home or House shall be allowed on said lot. No storage tank shall be above ground on said lot without written consent of the GRANTOR. *No building or construction of any kind may be made on the Parkway surrounding said Lake without the written consent of the GRANTOR.* All docks for the mooring of boats or other purposes shall be of a standard design that will be furnished by GRANTOR with a building permit." (Emphasis supplied.)

Other provisions of the warranty deed which are pertinent to this appeal read as follows: "4. No outbuildings shall be built on said lot. Garages shall be attached to or built in as a part of the residence. All rear entrances to residences shall be from the side of the residence where possible * * *." It also appears that, while it is not so stated in the warranty deed, the plaintiff was responsible for cutting the brush and weeds and general maintenance of the parkway.

The facts pertinent to this case show that this subdivision was platted around a lake and that the "parkway" referred to in Paragraph 3 of the warranty deed is a strip of land surrounding the lake and lying between it and the property line of the lake front lots. Defendant purchased four lots each of which is subject to the restrictions set out in this opinion. The structure here involved is a one-story wood building opening onto a stone covered patio. It is on the parkway at the lake's edge and is adjacent to defendant's dock. There is no dispute in the evidence as to defendant's request for permission to construct this building, and neither is there any dispute as to the refusal of that request by the plaintiff. The only dispute is as to the manner in which that refusal was communicated to the defendant. The plaintiff's evidence on this issue is that the defendant made a verbal request directed to its manager for permission and was told that he could not erect this building on the parkway; that at defendant's request the manager thereafter talked to plaintiff's president concerning the request; that the manager thereafter again informed the defendant that he could not have permission; and that both of these occurrences were prior to the beginning of any construction by the defendant. The defendant's own testimony on this issue is that when he made a verbal request of plaintiff's manager, the manager shook his head in a manner which defendant understood as indicating refusal; that defendant then gave the manager a plan or picture of the project (it is not clear which was given) and after consulting plaintiff's president, the manager again shook his head to indicate refusal. Defendant admitted that he received at least two letters from plaintiff informing him that the building on the parkway was in violation of the restrictions. There was no contention that written permission had ever been given for the erection of this building.

With reference to defendant's affirmative defenses, the evidence was undisputed that the restriction requiring storage tanks to be underground has never been enforced, and neither has the restriction which states that docks shall be of a standard design which will be furnished by the plaintiff. Plaintiff's evidence on this issue is to the effect that it hasn't furnished a standard design for the docks but that it has required some that weren't properly constructed to be rebuilt and in this manner has effected somewhat of a standard design.

The defendant contends that appellant has permitted the erection and maintenance of many temporary utility buildings in violation of the restrictions providing no outbuildings are to be constructed, that no building is to have an outside surface that is not painted or otherwise finished unless it be of log or slab construction, and that no residence should be wholly or partly covered with tar paper, metal or canvas. In his brief, defendant cites eleven exhibits which are pictures of various buildings which he contends are representative of the numerous violations of this restriction. Perusal of these exhibits indicates that three are clear violations in that they are wholly or partly covered with tar paper, and nine indicate the erection of a temporary utility or storage building characterized by defendant as an "outbuilding".

Defendant's brief cites twenty-one picture exhibits which he contends show structures maintained by others on the parkway. Some of these exhibits show retaining walls constructed of railroad ties, others show rectangular storage boxes placed upon rollers or upon concrete blocks maintained on the parkway, and still others show metal awnings placed on four metal poles covering patios and open on all four sides. There was no evidence as to whether written permission for any of these had ever been obtained from the plaintiff. None of the exhibits shows a structure similar in permanence or size to the defendant's building. Defendant's other exhibits deal with the accumulation of brush and wood along the parkway. Plaintiff's evidence was that the conditions shown on these pictures have been corrected and that the parkway has for some time been maintained in good condition.

The defendant's contention was that the plaintiff's manager knew of the construction of defendant's building from the very beginning of that construction. His proof on this issue consisted of certain questions and answers reading into evidence from the deposition of Mr. Bastman, plaintiff's president. That portion of the Bastman deposition bearing upon this issue reads as follows:

"Q. Do you regularly make inspections and tour around the Lake?

"A. Mr. Hurd goes around there everyday.

"Q. Hurd does it everyday? A. Yeah.

"Q. So if there was any work going on in the nature of work upon any docks or any buildings in that parkway that you speak of, Mr. Hurd would certainly be familiar with it because he inspects it everyday?

"A. If he would be able to see it from the road he would see it, but *he wasn't able to see that from the road.*

"Q. I want to make it clear, Mr. Bastman, Mr. Hurd, everyday as you just said, goes on to the lake and looks to see what's going on?

"A. That's right.

"Q. That's part of his work? A. That's correct.

"Q. And does do it? A. Yes. (Indicating)

"Q. Except when the lake is froze or something like that?

"A. *He don't go around the lake.*" (Emphasis supplied.)

■ Defendant contends that plaintiff cannot complain to this court concerning the trial court's action for the reason that the issuance or refusal of a mandatory injunction lies within the discretion of the trial court and there is no allegation in the plaintiff's motion for new trial contending that the trial court abused its discretion. We cannot agree. The pertinent effect of the plaintiff's motion for new trial is that the trial court erred in refusing to issue this mandatory injunction. If he did so err, he abused his discretion. There is no merit to this allegation of error.

It is firmly established in this State that a court is vested with power and authority by means of a mandatory injunction to compel the undoing of a thing already done in violation of restrictive agreements affecting real estate. Eichelsbach v. Harding, Mo.App., 309 S.W.2d 681, l. c. 684 [5] and cases there cited.

The burden was on the plaintiff to prove breach of the covenant. Smith v. Nussbaum, Mo.App., 71 S.W.2d 82. This burden was easy to bear in the instant case. As stated earlier herein, defendant never made any contention that plaintiff had given written consent to the erection of this structure. Without this permission the defendant's actions were in violation of the covenant absent establishment of one or more of defendant's pleaded affirmative defenses. Having that fact in mind and considering the undisputed location of defendant's building as being on the parkway, the plaintiff bore its burden of proof of a breach of the covenant prohibiting erection of a building on the parkway.

The defendant contends plaintiff cannot now proceed against him to correct this violation because it acquiesced in the violation; it was guilty of laches; and because it has abandoned the restriction. The facts do not show acquiescence on the part of the plaintiff. To the contrary, as stated earlier in this opinion, the defendant's own evidence was that he was told that he could not proceed, that he understood he was refused permission, and that this information was given him before he ever began construction. Moreover, the evidence is undisputed that defendant received several letters while he was in the process of erecting the building telling him that he did not have permission. No doubt realizing the hopelessness of his position on this issue the defendant makes no point of this matter in his brief.

The defendant contends the restrictions have been abandoned by plaintiff.

First, he contends that plaintiff has failed to enforce the restriction preventing a building on the parkway without the written consent of the grantor. There are many reasons why this contention is without merit. We will enumerate two, and those but briefly. The first of these is that the evidence does not support defendant's contention that plaintiff has failed to enforce the restriction against buildings on the parkway. To the contrary, the evidence is that there are no other buildings of a similar permanent nature on the parkway. None of defendant's exhibits show structures of a character and nature similar to that here involved. One exhibit shows a canvas tent which, of course, is not a building. Others show rectangular boxes which are not buildings or constructions. Moreover, it is obvious from the exhibits that they are not constructed upon the parkway but are placed upon rollers or blocks and, since they have handles, it may be inferred that from time to time they are removed. The defendant's building is a one-story wood building which is constructed on the parkway and does do exactly what this restriction was intended to prevent; i. e., blocking the view of the lake. Within the reference of this restriction the difference between defendant's building and the boxes, etc., shown in defendant's exhibits is too obvious to dwell upon further. As we read the evidence in this case we are compelled to the conclusion that plaintiff has enforced the restriction against buildings on the parkway. The second answer to this contention is that even if we were to hold that the defendant's exhibits show violations of this restriction (and we find to the contrary), defendant's contention of abandonment would still fail. This for the reason there is no proof the things shown in defendant's exhibits were not placed there with the plaintiff's permission. The defendant impliedly recognizes this deficiency by his contention he is the victim of discrimination and that plaintiff is granting permission to violate this restriction on the basis of its "whim and caprice" instead of upon a reasonable basis. See 19 A.L.R.2d

1294 (§ 10). We have already held that the things shown in the exhibits are not comparable to the defendant's building and so this argument must fail, but it is inapplicable regardless of that ruling. The purpose of this restriction was undoubtedly to prevent structures which would block a view of the lake and none of the things shown in the defendant's exhibits do this except for the building which is the subject of this controversy. Accordingly, there would be a reasonable basis to grant permission for the things shown in defendant's exhibits while denying permission for the construction of the building here involved.

█ The defendant then advances the contention that since the plaintiff has failed to enforce certain other restrictions contained in the warranty deed, it has abandoned them and that such abandonment constitutes an abandonment of all the restrictions in the deed including the one barring construction of any building on the parkway. In the instant case restriction against storage tanks being above ground has been abandoned, or at least the evidence is that it has been so as to propane gas storage tanks. The evidence of abandonment is undisputed as to the restriction requiring " * * * All *rear* entrances to residences shall be from the *side* of the residence where possible * * *." (Emphasis supplied.) In addition, there is some evidence that the restriction as to the standard construction of docks has been abandoned at least to the extent that the plaintiff has not and does not furnish a "standard design". There is also evidence that at least three lots have buildings which violate the restriction against being covered wholly or partly by tar paper.

It is true that in Eichelsbach v. Harding, supra, 309 S.W.2d 1. c. 686, this court said: " * * * Receiving universal recognition is the principle that where, as here, the restrictions apply to an entire subdivision, and are part of an over-all scheme designed for the benefit of all property owners in the restricted area, violations of the restrictions must be so general as to indicate an intention or purpose on the part of those residing in the subdivsion to abandon the plan or scheme intended to be maintained by force of the restrictions. * * *." But that case is not pertinent to defendant's contention abandonment of other restrictions means abandonment of that prohibiting buildings on the parkway also. In Eichelsbach v. Harding, supra, only one restriction was involved and the language cited, read in reference to the fact of that case, merely means that when there are repeated and widespread violations of a certain restriction, an intention may be inferred there has been an abandonment of the purpose or scheme that restriction was intended to effect. The case cannot be interpreted as authority for the defendant's position that abandonment of the purpose or scheme represented by one or more restrictions means that the purpose or scheme represented by other restrictions was also abandoned. The scheme of development of this subdivision or the purpose sought to be achieved by those restrictions as to storage tanks being above ground; as to all "rear" entrances of residences shall be from the "side" (????); as to the plaintiff furnishing a standard design for docks; and prohibiting outbuildings wholly or partially covered with tar paper; these may or may not have been abandoned. It is not necessary to so hold here for even if so, the scheme or purpose sought to be achieved by prohibiting the construction of buildings on the parkway without permission of the plaintiff remains unaffected. The defendant's contention the plaintiff has abandoned this restriction must be ruled against him.

█ The general principles applicable to the defense of laches are too well known to require citation. "Laches" is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done. There is no fixed period within which a person must assert his claim or be barred by laches. The

length of time depends upon the circumstances of the particular case. Mere delay in asserting a right does not of itself constitute laches; the delay involved must work to the disadvantage and prejudice of the defendant. Laches is a question of fact to be determined from all the evidence and circumstances adduced at trial. Equity does not encourage laches. Abernathy v. Hampe, Mo.App., 53 S.W.2d 1090. Laches cannot be invoked to defeat justice. It will be applied only where enforcement of the right asserted would work an injustice. Prestigiacamo v. American Equitable Assur. Co. of New York, 240 Mo.App. 839, 221 S.W.2d 217. American Life & Acc. Ins. Co. v. Morris, Mo.App., 281 S.W.2d 601. The burden of proof as to laches rests on the party asserting it; in this case, the defendant.

■ Has the defendant established the defense of laches? All that appears from this transcript is that this suit was not filed until after completion of defendant's structure. There is no evidence as to how long after nor any testimony as to how long it took to construct this building, nor when construction of it began, nor when plaintiff first knew of its construction, nor as to any other matter bearing upon the time that passed between the date the building was finished and the date suit was filed. Counsel for defendant is incorrect in his statement in the brief that appellant's manager "* * * inspects the entire parkway daily * * *." Tacitly admitting there was no other evidence showing that plaintiff's manager knew of the erection of defendant's building, defendant's counsel uses this statement as a basis for his contention that plaintiff's recovery should be barred by laches. His argument is that since plaintiff's manager inspected the premises he must have seen the construction of this building and yet did nothing about it until it was finished. We need not rule the question of whether such evidence would require the plaintiff to take immediate action in the courts to stop defendant from proceeding or be barred by laches. This for

the reason that, as is apparent from that portion of this opinion wherein the actual testimony that bears upon that issue is set out, the evidence was to the contrary of what defendant contends it to be. In fact, the evidence was that the inspections made by plaintiff's manager were made in such a manner that he could not observe whether this cabana was being constructed.

■ There is another reason that compels our decision against the defendant on this point. While Schaeffer v. Moore, Mo., 262 S.W.2d 854, 1. c. 860 [14], is not factually analogous, we believe the rule therein stated with regard to delay is equally applicable to this case. Therein it was held: "* * * Where no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed, the delay is not fatal. * * *." In this case there can be no contention that, regardless of how long a period of time was involved, such delay misled the defendant to his harm in any legal sense. The defendant was never misled by delay or otherwise as to his lack of permission to construct this building. He knew from the very beginning that he lacked the required permission to violate this restriction. Whatever delay occurred cannot be said to have caused the defendant to have reasonably believed the plaintiff had changed its twice repeated position regarding refusal of permission to construct this building.

■ The exhibits indicate that the building is of such construction that it can easily be removed. In fact, it is reasonable to conclude from looking at the exhibits that the building need not even be torn down to be removed, but is of a size and type of construction that, once removed from its below ground supports, can be removed intact. Considering that factor together with the defendant's deliberate violation of the restrictive covenant and the value of that covenant to a lake development project such as this, we hold this a proper case for the issuance of a mandatory

injunction requiring the defendant to remove his building from the "parkway".

The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment requiring the defendants to remove their building from the "parkway".

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment requiring the defendants to remove their building from the "parkway".

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.