# Feore *v.* Avent.

## *Assumpsit.*

(Decided April 4, 1912.  58 South. 727.)

1. *Evidence; Parol; Varying Contract.*—Where a contract on its face equally described two or more persons or things parol evidence is inadmissible to show what was intended by the parties, as this is a patent ambiguity; but, where the contract on its face, is not doubtful, but by proof the language may be shown to be applicable to two or more persons or things, such uncertainty may be explained by parol evidence.

2. *Same.*—A contract to purchase a specified number of · shares of stock of a bank, the original issue of which was $25,000, divided into shares of $50 each, but which had subsequently and before the making of the contract, increased its capital to $75,000, contains a latent ambiguity as to the subject matter of the contract as to whether the original issue of the stock or the subsequent issue is involved, and parol evidence becomes admissible to identify the particular stock embraced in the contract.

3. *Contracts; Meeting of Mines.*—Where the seller and the buyer did not mutually agree as to whether the original issue or the subsequent issue of the stock of the bank, was the stock to be sold, there was not such mutual assent as to make a contract.

4. *Banks and Banking; Stocks; Contract of Sale.*—Where a buyer in reliance on the seller's representations that he would transfer his certificate of stock originally issued by the bank, which originally issued $25,000 worth of stock, contracted to buy the stock of the seller in the bank for a specified sum in the amount of 20 shares, and the bank subsequently, and before the contract increased its stock from $25,000 to $75,000, the buyer would not be compelled to take and pay for any except the original stock which was more valuable than the stock subsequently issued.

5. *Same; Representation.*—A representation by a seller of stock of a bank which originally issued $25,000 worth of stock and subsequently increased the stock to $75,000, · by declaring a stock dividend, that the stock to be sold was the original stock was a representation of a material fact, and if false, the buyer could decline to accept the stock under the subsequent issue.

APPEAL from Mobile Circuit Court.

HEARD before Hon. SAMUEL B. BROWNE.

Action by R. C. Avent against James J. Feore for breach of contract to purchase stock. Judgment for

plaintiff and defendant appeals. Reversed and remanded.

PILLANS, HANAW & PILLANS, for appellant. The court erred in sustaining objections to the testimony of Mr. Feore.—*Leon v. Perrison,* 36 South. 173; 31 Cyc. 43 and 680-2; Greenl. sec. 50, et seq. When no ruling on demurrer is shown the presumption is that it was withdrawn or abandoned.—*Alabama Bank v. Hunt,* 125 Ala. 518; *So. Ex. Co. v. Ashford,* 126 Ala. 597; *M. & C. v. Martin,* 131 Ala. 276. The representations were false and material.—Clark on Contracts, p. 314; 11 N. E. 241; 20 Ch. Div. 1. There was no meeting of the mines.— *Kyle v. Cavanaugh,* 103 Ala. 356; *Cutts v. Gill,* 57 N. Y. 229; *Ervin v. Wilson,* 15 N. E. 209; *Roland v. Logan,* 18 Ala. 307; *Hill v. Nelms,* 86 Ala. 442.

STEVENS & LYONS, for appellee. The writing stands as the sole evidence and muniment of the agreement finally made.—*Drennen v. Satterfield,* 119 Ala.. 84; *Watson v. Kirby,* 112 Ala. 442. No misrepresentation can influence a contract unless the same be of a material fact, and work injury.—*Ball v. Farley,* 81 Ala. 292; *Jordan v. Picket,* 78 Ala. 338; *Kelly v. McGrath,* 70 Ala. 80; 14 A. & E. Enc. of Law, 62. A dividend is distinct from capital stock, surplus or profit, and is the property of the stockholder.—2 Cook on Corp. 541. No plea, whether sufficient or insufficient in law can avail anything until proved in all substantial particulars.—*Winter v. Loeb,* 100 Ala. 505; *Taylor v. Smith,* 104 Ala. 545; *Wellman v. Jones,* 124 Ala. 589.

WALKER, P. J.—This was an action to recover damages for the alleged breach by the defendant (the appellant here) of his written contract with the plaintiff,

which, omitting the date and the signature, was as follows: "I hereby agree to buy the stock of R. C. Avent in the Merchants' & Marine Bank of Scranton, 20 shares, for the sum of $2,100.00 cash, twenty-one hundred dollars. The complaint duly averred the plaintiff had offered, and remained ready and willing to comply with the contract on his part, but that defendant refused to accept and pay for the stock upon the terms set forth in the agreement. In several special pleas the defendant alleged the existence of the following state of facts: The original issue of capital stock by the bank mentioned in the contract amounted to $25,-000, divided into shares of $50 each. Subsequent to that original issue, and before the making of the contract sued on, the bank increased its capital stock to $75,000 in the following manner: A stock dividend of 100 per cent. was declared on the original capital stock then outstanding, and the increase of $25,000 of capital stock thus made was distributed to the shareholders in the bank by calling in the old certificates of stock representing the shares under the original issue, and reissuing to the stockholders new certificates for stock; each old stockholder thus receiving two shares of stock for each share that he had before had of the old stock and the par value being the same in both the original and the new issue. The remaining $25,000 of increase was sold in the open market for cash, which was added to the capital of the bank. It was averred that an unsurrendered certificate evidencing 20 shares of the original stock issue was of greater market value than a certificate evidencing 20 shares of the increased issue. Two of the special pleas averred that just before the making of the agreement sued on, and as an inducement thereto, the plaintiff represented to the defendant that the certificate of stock held by the plaintiff, and which was the subject of the

[Feore v. Avent.]

contract sued on, represented 20 shares of the original issue of capital stock of the said bank; that the defendant entered into the agreement on the faith of this representation, the plaintiff's certificate not being exhibited at the time the contract was entered into, and he then being ignorant of the true state of facts touching the said stock; and that the certificate of stock tendered by the plaintiff did not represent 20 shares of the original issue of stock, but was a certificate representing that number of shares of the new and increased capital stock issue. Others of the special pleas referred to omitted any charge of misrepresentation, and averred that the shares of stock mentioned and intended by the agreement declared on were 20 shares of the original stock, evidenced by a certificate issued by the bank before the above-described increase of its capital stock was made, but that the certificate tendered by the plaintiff was issued subsequent to the increased capital stock issue, and was worth less in the market than the certificate of shares of the original issue of stock intended in the agreement. The rest of the special pleas above referred to, also omitting any charge of misrepresentation, averred, in effect, that in law no contract was entered into between the parties, because at the time the supposed contract was made the parties thereto did not have in mind the same subject-matter of contract, as the plaintiff had in mind and intended to contract concerning a certificate evidencing shares of stock of an issue made by the bank upon or after an increase of its capital stock, while the defendant had in mind and intended to contract concerning a certificate evidencing shares of the original stock issue of the bank before there had been an increase of its capital stock. In short, by those pleas the defendant undertook to assert three separate grounds of defense, namely: (1) That the defendant was induced to enter into the

[Feore v. Avent.]

agreement sued on by a false representation of the plaintiff as to the identity of its subject-matter: (2) that both parties intended a sale of one thing, while the plaintiff was undertaking by the suit to hold the defendant liable in damages for his refusal to accept and pay the stipulated price for another and different thing; and (3) that the instrument sued on never amounted to a contract, as, at the time of its execution, one of the parties had in mind one thing as its subject-matter, while the other party intended to contract with reference to something else, the result being that the minds of the parties failed to meet on one of the essential terms of the supposed contract. The plaintiff's demurrers to these pleas were sustained. The pleas above described represented the final effort of the defendant to present the special grounds of defense relied upon by him. They had been preceded by other pleas framed along the same lines, to all of which demurrers had been interposed. The record shows that the demurrers to some only of those previously filed pleas were sustained, and fails to show that the court ruled at all on the demurrers to the rest of those earlier pleas; but the rulings made in the course of the trial of the issues of fact in the case does not indicate that the court recognized as valid defenses any of the matters set up by special pleas. In view of this situation, the court will confine its attention to the pleas above described, which were the final expression by the defendant of the matters relied on by him to defeat the plaintiff's right to recover.

The demurrers to the pleas in question assigned a multitude of grounds. The grounds upon which the ruling on them is sought to be sustained by the argument of the counsel for the appellee are those based upon the ideas or proposition: (1) That, the contract sued on being a plain and unambiguous agreement to purchase 20

shares of corporate stock, the result of holding the pleas to be good would be to let in parol proof of a representation as to the identity of the subject-matter of the contract which the terms of the contract itself unequivocally identified, in disregard of the rule against allowing the provisions of a written contract to be altered or varied by parol evidence; and (2) that, as each share of the capital stock of a corporation having but one class of stock must be worth exactly the same as every other share, the effort of the pleas to show that some shares of stock issued by the corporation mentioned were worth more than other shares of stock issued by it was an attempt to show the existence of a legal impossibility. The inquiry then is as to the soundness or correctness of these two propositions as applied to the state of facts disclosed by the pleas.

The first in order of the propositions just stated ignores the distinction between a patent and a latent ambiguity, and also the familiar rule of law that an ambiguity of the latter kind in the description of its subject-matter contained in a written instrument may be shown to exist and may be removed by extrinsic parol evidence. The law on this subject was thus stated by Stone, J., in delivering the opinion of the court in the case of *Chambers v. Ringstaff*, 69 Ala. 140: "The distinction between latent and patent ambiguity has long existed, and the general rule applicable to each class of cases should not be disturbed. When a contract or conveyance, on its face, or aided by judicial knowledge, equally describes two or more persons, things, etc., this is a patent ambiguity, or ambiguity apparent. In such case, the rule is clear, and we do not wish to depart from it, that parol proof of what was intended by the contracting parties will not be received. Latent ambiguity exists where, on the face of the paper, no doubt or

uncertainty exists, but by proof aliunde the language is shown to be alike applicable to two or more persons, things, etc. When this is the case, the uncertainty or ambiguity may be explained or cleared up by the same character of proof as that by which it is made to appear."

There was no patent ambiguity in the contract sued on. No claim could well be made that it was rendered unenforceable by a failure of its terms to describe the subject of the sale agreed on. But if the 20 shares of stock mentioned might, because of the different circumstances attending separate and different issues of its stock by the corporation mentioned, mean either one thing or another, there lurked in the contract a latent ambiguity as to what its subject-matter really was. If the description of the subject dealt with found in the terms of the contract might apply to more than one thing, this fact, and also a statement or representation so made as to identify the particular thing intended to be contracted about, may be shown by parol evidence, without any violation of the rule against admitting such evidence to vary or contradict the terms of a written instrument.—*Chambers v. Ringstaff, supra; Watson v. Kirby & Sons,* 112 Ala. 436, 20 South. 624; *Brannan v. Henry,* 142 Ala. 698, 39 South. 92, 110 Am. St. Rep. 55; Jones on Evidence, § 472. It follows that, if such a state of facts existed as the averments of the pleas in question undertake to disclose, those pleas are not rendered subject to objection by reason of their making it apparent that resort would have to be had to parol evidence to prove the matters of defense alleged. If those pleas do not, as suggested in the other proposition advanced in behalf of the appellee, undertake to base a defense on things which cannot be recognized as legally possible, no rule of evidence stands in the way of

the defendant's right to maintain them. The demurrers to the plea in question cannot be sustained on the grounds suggested by views of the law opposed to the conclusion just stated.

The next question is whether, in the situation and circumstances of the parties when the contract was made, as disclosed by the averments of the pleas, it was legally possible for the contract to have had reference to bank stock different from that which the plaintiff tendered and which the defendant refused to accept. A negative answer to this question would involve the assertion that a share of stock issued by that corporation at any time represented the same quantum of interest in or ownership of its net assets as was represented by any other share of its stock issued at any other time. In view of the facts stated in the pleas as to the different issues of stock made by the bank, that assertion cannot be sustanied. In considering this matter, the stock sold in the open market when the capital stock of the bank was increased may be put out of view, as it can be taken to represent the actual addition thereby made to the capital. Before that addition to the capital stock was made, and before there had been any increase in the nominal amount of the capital stock, each share of the original issue of stock represented an undivided interest in the property or business, the quantum or amount of which was determined by the whole number of such shares outstanding. It is obvious that the result of doubling the number of shares without adding anything to the assets which they represented was to make each new share, though of the same face value as the old ones, worth intrinsically just one-half what a share of the original issue was worth before a different basis of division was adopted. A holder of an old certificate for ten shares owned and his certificate evidenced the same quan-

tum of interest in the bank as was represented
by a new certificate for 20 shares issued in exchange for
an old one for 10 shares. To say that the new shares
were the same as the old ones amounts to saying that a
half is equal to the whole. Now it was as permissible for
parties to trade or contract for the old shares or inter-
ests as for the new ones. The description in the contract
of "the stock of R. C. Avent" might apply to stock of
either the old issue or the new. The pleas aver that he
represented it to be old stock, and that the defendant
contracted on the faith of the truth of this representa-
tion. If the circumstances surrounding the making of
a contract for the sale of one's stock interest in the bank
were such as to make it apparent that the subject-matter
of the contract was a stated number of old shares and
that the purchaser was to acquire the entire interest ev-
idenced by the certificate for such shares then supposed
to be held by the seller, it follows as a matter of course
that the party agreeing to buy could not be required to
pay the stipulated price for something different from
what he contracted for.—*McGehee et al. v. Alexander*,
104 Ala. 116, 16 South. 148. We are of opinion that sub-
stantially such a state of facts is shown by the averments
of the pleas first above described. It is suggested, as an
obstacle standing in the way of this conclusion, that a
transfer of corporate stock does not divest the transfer-
ror of the right to a previously declared dividend on it,
and that for this reason the misrepresentation alleged
could not be regarded as material, as the sale would
leave in the seller the right to half of the new shares to
be issued on the surrender of the old certificate. But in
the circumstances stated in the plea an agreement for
unconditional transfer of a certificate for old shares
would be inconsistent with an intention on the part of
the transferror to reserve to himself the stock dividend

as it was payable. Such a transfer, agreed upon in the circumstances stated, was entitled to be treated as an order by the transferror on the bank to issue to the transferee all the new shares into which the old ones represented by the certificate were convertible. A sale without reservation to another of the sole recognized evidence of the right to demand the issue of new shares in lieu of old ones imports an intention that all the shares to be issued on the surrender of the certificate were to go to its new holder.

It follows, from what has been said, that the alleged statement or representation by which the defendant was induced to enter into the contract sued on is to be regarded as one in reference to the identity of the subject-matter of the contract. The materiality of the fact represented is apparent. The falsity of the statement so relied upon by the defendant entitled him to decline to accept or pay for 20 shares of stock different from that which he agreed to buy.—*Jordan & Sons v. Pickett,* 78 Ala. 331; *Hicks v. Stevens,* 121 Ill. 186, 11 N. E. 241; 1 Page on Contracts, §§ 143-145.

If, as averred in other pleas, both parties understood and intended the contract to be in reference to 20 shares of the bank's original issue of stock, it is plain that, on the facts stated in these pleas, the plaintiff could not maintain his action, which was for the recovery of damages claimed of the defendant because of his refusal to accept and pay for 20 shares of the new stock, which he had not agreed to buy. And if, as averred in still other pleas, the plaintiff in entering into the contract understood that he was binding himself to sell the 20 shares of the stock for which he held a certificate, while the defendant understood (as the pleas show he was justified by the attending circumstances in understanding) that he was obligating himself to buy 20 shares of

the old stock, then the action cannot be maintained, because the parties failed to make any contract at all. "Parties, in attempting to make a contract, sometimes appear to have agreed, when on closer inquiry they discover they have not. They misunderstood each other, either as to the subject-matter, or as to some term of the agreement. There is, in such case, an absence of that indispensable element of all contracts, the concurring assent of two minds. When this is the case, and it is sufficiently shown any court having jurisdiction will declare there is no contract."—*Houston v. Faul*, 86 Ala. 232, 5 South. 433. The existence of such a misunderstanding as is mentioned in this quotation was alleged in the special plea last above described.

What has been said sufficiently indicates the ground of the conclusion reached that the court was in error in sustaining the demurrers to the special pleas which have been the subjects of consideration.

Reversed and remanded.