THE STATE ex rel. MORRISON INVESTMENT
    COMPANY v. FRANCIS H. TRIMBLE et al.,
    Judges of Kansas City Court of Appeals.

In Banc, November 20, 1923.

1. CONTRACT: Sale of Real Estate: Parol Evidence of Terms:
   Ambiguity: Price in Excess of Mortgage. Plaintiff's written con-

State ex rel. Morrison Inv. Co. v. Trimble.

tract appointed a real estate agent to sell described property "for the price of $4,000 net." At the time there was a mortgage for $700 on the property, and in a suit to recover a balance claimed to be due under a sale plaintiff was permitted to testify that in the negotiations leading up to the making of the contract it was clearly understood and agreed that the property was to be sold for enough to pay off the mortgage and expenses and to pay plaintiff $4,000 in addition. *Held*, that the trial court did not err in admitting evidence in explanation of the words "$4,000 net," nor was the admission of plaintiff's said testimony contrary to the rule that parol evidence is not admissible to alter, add to, contradict or vary the terms of a written instrument.

*Held*, by WHITE, J., dissenting, that the contract was one between the agent and the seller, and not one between the seller and purchaser, and related wholly to the agent's commission, and there is nothing in the words "$4,000 net" that can be construed to include an existing mortgage, and the admission of parol evidence to vary the written instrument would be error.

2. ———: Ambiguity: Four Thousand Dollars Net: Parol Evidence. Words in a written contract constituting a latent ambiguity may always be explained by parol testimony; and if the contract, by its terms, is subject to different meanings, concerning which reasonable minds may reach opposite conclusions, it is ambiguous, and outside evidence may be admitted for the purpose of ascertaining the real intention of the parties. The words of a contract appointing an agent to sell lands for "$4,000 net" are ambiguous, since, with nothing more, it cannot definitely be said whether the property was to be sold for $4,000 in addition to expenses and an existing mortgage, or whether the encumbrances and expenses were to be paid out of the $4,000; and the Court of Appeals in so ruling contravened no decision of this court.

*Held*, by WHITE, J., dissenting, that the words "$4,000 net" are not ambiguous, but mean that the seller was to receive $4,000 above the agent's commission and expenses; and the further agreement of the seller "to make a good and sufficient warranty deed" in case of sale meant that he himself would clear the property of all encumbrances.

3. CERTIORARI: Court of Appeals: Interference. A Court of Appeals has the inherent right to determine the issues involved in a case of which it has appellate jurisdiction, so long as it makes no ruling in conflict with former decisions of the Supreme Court, in a like case; and where there is no such conflict the Supreme Court cannot interfere with such rulings, whether they be right or wrong.

*Certiorari.*

PRELIMINARY RULE DISCHARGED.

*Sebree & Sebree, Mord M. Bogie* and *Wm. Paul Pinkerton* for relator.

(1) The Court of Appeals erred in overruling assignments of error made by relator (appellant below) as to the admissibility of evidence to change or vary the terms of a written contract, and in so ruling the opinion of the Court of Appeals conflicts with controlling decisions of the Supreme Court in the cases of McPherson v. Kissee, 239 Mo. 664; Herryford v. Turner, 67 Mo. 296; Tracy v. Union Iron Works, 104 Mo. 193; Crim v. Crim, 162 Mo. 544; Beheret v. Myers, 240 Mo. 58. (2) The Court of Appeals erred in overruling assignment of error by relator (appellant below) and in overruling relator's motion for rehearing, and for the reason that the Court of Appeals in so ruling changed the terms of the contract in suit by judicial construction, and in so ruling the opinion of the Court of Appeals conflicts with the controlling decisions of the Supreme Court set forth above.

*Watson, Gage & Ess* and *Conger R. Smith* for respondents.

The Kansas City Court of Appeals did not err in overruling assignments of error made by relator as to the admissibility of evidence alleged to have changed or varied the terms of a written contract, and said action of the Court of Appeals on said issue is not in conflict with the decisions of the Supreme Court in McPherson v. Kissee, 239 Mo. 664; Herryford v. Turner, 67 Mo. 296; Tracy v. Union Iron Works, 104 Mo. 193; Crim v. Crim, 162 Mo. 544; or Beheret v. Myers, 240 Mo. 58. See 13 C. J. sec. 498, p. 536; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 61; Interior Linseed Co. v. Paint Co., 273 Mo. 443; Love v. Scatherd, 146 Fed. 1; 77 C. C. A. 1.

DAVIS, C.—*Certiorari* to the Kansas City Court of Appeals. Action to recover balance claimed to be due under a contract for the sale of certain real estate owned by plaintiffs in Kansas City, Missouri. Verdict and judgment for plaintiffs in the sum of $708. 58. The Kansas City Court of Appeals reversed and remanded the cause on account of an erroneous instruction. Relator thinks the cause should have been reversed outright.

The facts, as set forth in the Court of Appeals opinion, are as follows:

"On March 27, 1920, plaintiff, Thomas Sandbrook, called at the office of the defendant in response to an advertisement and there entered into the following contract:

" 'To W. L. Morrison Inv. Co. for and in consideration of one dollar, the receipt of which is acknowledged, I hereby appoint you exclusive agent to make sale of the real property herein described as Lots 9 and 10, in Block 4 Co'ds Brooklyn Hill Addn. Known as 2210 E. 20th St. for the price of $4,000 net upon the following terms $——— cash, cash $———, secured by mortgage thereon for ——— years at ——— per cent, and you are hereby authorized to accept deposit to be applied on the purchase price, and to execute a binding contract for sale on my behalf.

" 'In case above described property is sold or disposed of within the time specified, I agree to make the purchaser a good and sufficient warranty deed to the same and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale no per cent commission on the above price; and 100 per cent of all of the consideration for which said property is sold over and above price specified, and in case said property is sold within said time either through you or any other person, then in that case I promise to pay you 5 per cent on the whole amount for which said property may be sold.

" 'This contract to continue until June 1, 1920 and thereafter until terminated by notice giving unto you as agent 10 days' notice in writing.

" '(Signed) Thos. Sandbrook.
" '(Signed) ——————Witness.'

"The contract was on a printed form. The word and figures '$4,000 net' were inserted in long hand by defendant. Plaintiff, Thomas Sandbrook, testified, over defendant's objection, that upon going to defendant's office he saw one Colvin and told him he wanted $4,000 cash for his property; that there was a first mortgage on it which was for approximately $700; that before any commission could be earned by the defendant it would be necessary for it to sell the property for enough to pay off the mortgage and to give said plaintiff the sum of $4,000 in cash in addition; that Colvin then turned said plaintiff over to another employee of defendant and told the latter to write up the contract, said plaintiff telling the latter employee the same that he had told Colvin. This employee then wrote up the contract and said plaintiff signed it. The property was owned by both plaintiffs, who were husband and wife. The husband signed the contract intending to bind his wife as well as himself and his wife ratified the acts of her husband."

I. Relator urged that the trial court erred in admitting evidence in explanation of the words "$4,000 net," as did the Court of Appeals in affirming same and holding the words ambiguous. He further urges that the evidence introduced, relative to the $700 mortgage and the $4,000 to be received in addition, is in conflict with the rule of law enunciated in this court in McPherson v. Kissee, 239 Mo. 664; Herryford v. Turner, 67 Mo. 296; Tracy v. Union Iron Works, 104 Mo. 193; Crim v. Crim, 162 Mo. 554; Beheret v. Myers, 240 Mo. 58, deciding that parol evidence is inadmissible to alter, add to, contradict or vary the terms of a written instrument, since all prior or contemporaneous verbal agreements, relating to the subject-matter, are merged in the written contract. The above cases

relied upon by-relator, as controlling, and with which he contends the opinion of the Court of Appeals is in conflict, came to this court by direct appeal. The facts in each case are entirely different from the facts in the case at bar, and this court was clearly right in its findings therein.

In McPherson v. Kissee, supra, defendant represented in his written contract that the land he agreed to exchange was subject to two mortgages, aggregating $5,-000. The court held parol evidence inadmissible to show a third mortgage of $803. Having mentioned mortgages in the written contract, the parties thereto could readily assume that the contract contained all the agreements regarding mortgages.

In Herryford v. Turner, supra, after a sale of real estate under a deed of trust, but before the execution of the deed by the trustee, the defendant, the purchaser at the sale, agreed to sell the land to plaintiff. At the request of the defendant and with plaintiff's consent, the trustee executed the deed directly to the plaintiff. At the time of the sale and the execution of the deed, the land was encumbered for taxes, to defendant's knowledge. Plaintiff paid the taxes and brought suit to recover. As the defendant did not execute the deed containing the warranty, the court held, impliedly at least, that privity did not exist between the parties.

In Tracy v. Union Iron Works, supra, the plaintiff granted defendant a lease to a certain piece of property in Kansas City. The plaintiff sued to recover rent, which defendant admitted due, but filed a counterclaim, alleging the breach of a verbal agreement on the part of plaintiff to put in a railway switch to connect the premises with a railroad nearby. The court held that a written instrument cannot, as a rule, be added to, varied or contradicted by evidence of contemporaneous or prior oral agreements.

In Crim v. Crim, supra, suit was instituted on a foreign judgment. The answer sets up fraud in the execution of the note, and the court there held (*obiter dic-*

*tum*) that it is an invariable rule of law, that, in the absence of fraud or mistake, parol evidence is inadmissible to contradict or vary a written contract. The court said that even though there be fraud in the execution of the note constituting the cause of action, the judgment could not be attacked collaterally.

In Beheret v. Myers, supra, plaintiff brought suit for the specific performance of a contract to convey land. The contract provided that if defendants wished to withdraw the above property from market or advance the price, they agreed to give the agency a written notice of thirty days prior to such withdrawal or advance. Upon the trial the defendants introduced parol evidence from which it might be inferred that both sides assumed the contract was at an end prior to the sale to plaintiff. The court held that the contract was not ambiguous, there was no room left for construction, and the parol evidence was inadmissible.

Reading the above cases, it is evident that ambiguous words or expressions, calling for an explanation, are not to be found in the contracts. They are based on a totally distinct state of facts from the case under consideration.

It is an unquestioned rule of law, adhered to in this and other jurisdictions, that parol evidence is inadmissible to alter, add to, contradict or vary the terms of a written instrument. It is also an unquestioned rule of law that words, in a contract, constituting a latent ambiguity, may be explained by written or oral extrinsic evidence.

The question for determination is whether the present contract is free from uncertainty and ambiguity. If clear and definite, extrinsic evidence, explanatory of its terms, may not be received in aid of construction or interpretation. If, on the other hand, the language is not so clear and definite as to be free from ambiguity, then extrinsic evidence may be received to ascertain the true intent of the parties and gather its meaning and purport. If, by its terms, it is subject to different meanings, con-

cerning which reasonable minds may reach opposite conclusions, then outside evidence may be admitted to reach what the parties intended.

We think that reasonable minds may fairly and honestly differ regarding what the parties intended by the use of the words "$4,000 net." It cannot be said, with certainty, what the words mean. It requires interpretation to understand whether the words mean that plaintiffs were to receive $4,000 in cash and go their way, leaving the expenses and encumbrances to be taken care of by others, or whether the words used mean that charges and liens were to come out of the $4,000 cash. Interpreting the intention of the parties, without more, would be merely surmise. The word "net" must have been inserted for a purpose. That purpose could only be ascertained through extrinsic evidence. The object of interpretation is to gather the intention of the parties as expressed in the writing. Where the writing is not clear and does not plainly express the intention of the parties, resort may be had to the surrounding situation and circumstances to gather the meaning as there expressed. Construing the contract before us, its meaning and intention is not capable of being revealed without further proof. The language used is ambiguous. Its uncertainty can only be definitely determined by outside facts, explanatory of its terms. [Linseed Co. v. Paint Co., 273 Mo. 433; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25.]

The trial court and the Court of Appeals found that the language used was uncertain and ambiguous. The use of parol evidence in explanation of its terms was therefore in accord with the rulings laid down by this court. As long as the court promulgated no rule of law which could be said to conflict with a former ruling of this court, it had the inherent right to determine the issues involved, whether its ruling be right or wrong. [Howland v. Ry. Co., 134 Mo. l. c. 479; Garey v. Jackson, 148 S. W. l. c. 982; State ex rel. v. Farrington, 195 S. W. 1044; Lavelle v. Insurance Co., 231 S. W. l. c. 618.]

II. We think the decision of the Court of Appeals based on the facts stated therein is not in conflict with any previous ruling of this court. The writ was improvidently issued, and is therefore quashed. *Railey* and *Higbee, CC.,* concur.

PER CURIAM:—The foregoing opinion of DAVIS, C., in Division Two is hereby adopted as the opinion of Court in Banc. All of the judges concur, except *White, J.,* who dissents.

WHITE, J. (dissenting).—I. I dissent from the conclusion reached by DAVIS, C., in approving the opinion of the Kansas City Court of Appeals. The contract construed, which for convenience I reproduce, is as follows:

Unambiguous Contract.

"To W. L. Morrison Inv. Co. for and in consideration of one dollar, the receipt of which is acknowledged, *I hereby appoint you exclusive agent to make sale of the real property herein described as Lots 9 and 10, in Block 4 Co'ds Brooklyn Hill Addn. Known as 2210 E. 20th St. for the price of* $4,000 *net upon the following terms*: $—— cash, cash $——, secured by mortgage thereon for —— years at ——per cent, and you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on my behalf.

"In case above-described property is sold or disposed of within the time specified, *I agree to make the purchaser a good and sufficient warranty deed to the same* and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and *may retain from the proceeds arising from such sale no per cent commission on the above price; and* 100 *per cent of all of the consideration for which said property is sold over and above price specified,* and in case said property is sold within said time, either through you or any other person, then in that case *I promise to pay you* 5 *per cent on the whole amount for which said property may be sold.*

"This contract to continue until June 1, 1920, and thereafter until terminated by notice giving unto you as agent 10 days' notice in writing.

"(Signed) THOS. SANDBROOK.

"(Signed) ————  ———— Witness."

The holding by the Kansas City Court of Appeals that this contract was ambiguous in relation to the terms of sale, is erroneous. In that respect the contract is clear and needs no parol explanation. One acquainted with the real estate business would understand at once that the seller, Thomas Sandbrook, was to convey the title to his property for four thousand dollars and pay no commission; the agent was to get his commission from the purchaser. All that purchase price was to go to Sandbrook, whatever portion of it he might use to pay debts against the place.

The contract relates solely to the compensation the agent should receive for services rendered. It has nothing to do with the state of the title nor with the incumbrance against the property, except it provides that Sandbrook shall "make the purchaser a good and sufficient warranty deed," which, of course means that he will clear it of all incumbrances. It was not a contract with the purchaser, and that stipulation was inserted so that the agent might make a specific contract with the purchaser. It was not necessary to mention the purchase price in the contract, except as a basis for determining the amount of the commission. The "$4,000 net" inserted with a pen in the printed form, probably was intended to clarify the contradictory statements in the contract in regard to the agent's commission, one to the effect that his commission should consist of any amount over and above the price of $4,000, the other to the effect that he should receive five per cent of the purchase price. These two stipulations, connected with the conjunction "and," might be understood to require payment of two commissions. The insertion of "4,000 net" precludes that understanding. Probably the form was printed in that way so that one or

the other provision could be stricken out. Instead of that Sandbrook inserted "$4,000 net." The intention of the parties, as shown by the entire contract, would govern. There is no dispute as to the interpretation of that feature of the contract. The controversy arises over the claim of Sandbrook that the "$4,000 net" excludes the payment by him of his incumbrances, whereas the entire context shows it relates to the commission.

II. Further, no evidence was offered for the purpose of showing that the expression "$4,000 net," as used in a real estate agent's contract had more than one meaning, or that it required explanation. On the contrary, the only parol evidence offered was not for the purpose of clearing up an ambiguity, but for the purpose of proving a parol contract different from the written one. The evidence admitted tended to show that *before* the contract was entered into the parties reached an understanding different from that reduced to writing. In holding such evidence admissible, the conclusion of the Kansas City Court of Appeals was contrary to repeated rulings of this court; not only those mentioned in relator's petition, but a long line of which hold that a written contract may not be modified or changed by parol evidence, and cases which hold that all prior negotiations are merged into a written contract afterwards entered into.

*Parol Evidence.*

For these reasons I dissent from the conclusion reached by the learned Commissioner, and think the judgment of the Kansas City Court of Appeals should be quashed.