ELIZABETH S. KAST, Appellant, v. KENNETH F. KAST, Respondent, No. 41618—235 S. W. (2d) 375.

Division Two, January 8, 1951.

*Cornelius Roach* and *Mack Hency* for appellant; *Roach, Brenner & Wimmell* of counsel.

*Sam D. Parker* and *Robert D. Youle* for respondent; *Lathrop, Crane, Sawyer, Woodson & Righter* of counsel.

[376] BARRETT, C.—In November 1942, during the pendency of a divorce action between the appellant, Elizabeth S. Kast, and the respondent, Kenneth F. Kast, the parties entered into a property settlement agreement entitled ''Stipulation.'' The ''stipulation''

contains a preamble in which it is set forth that the parties had attempted to come to some amicable financial settlement but had been unable to do so and that their counsel had engaged in a conference with the trial judge who indicated what he thought would be a proper allowance for alimony and child support. In conclusion the preamble recites that "he would not feel disposed, in view of all of the circumstances which had been explained to him to enlarge upon the alimony allowance or to require defendant to pay a cash amount for the future education of said minor son, Richard, but that he was inclined to make an order based upon the needs as of this date, and would reserve unto himself the right to reconsider the matter at any time the conditions of the parties were altered and justified such reconsideration, * * *." The stipulation then recites that the parties had reconsidered their financial differences and had agreed, in nine numbered paragraphs, as follows: that neither party would object to an order allowing the plaintiff $125.00 per month alimony and $75.00 a month for the support of their minor son, from November 1, 1942; that the husband was to convey to the wife all his interest in their home, 5 West 62nd Street, in Kansas City; that she was to give him title to a Buick automobile and he was to give her title to a Nash automobile; that she was to have all household goods; that she was to join in the execution of a deed to certain Florida property; that he then paid her $950.00 in cash, $350.00 of which was to defray the son's dental expenses and from the balance she was to pay her attorneys' fees and the court costs, and that she was to give him certain books, records and personal belongings. Paragraph eight, which is the basis of this action, is as follows:

"Defendant agrees to transfer to plaintiff 75 shares of stock of Sears Roebuck & Company, if and when said stock is received by defendant from the Profit Sharing Fund of said Sears Roebuck & Company."

The value of the stock in November 1942 was not agreed upon in the stipulation but in her petition Mrs. Kast alleges and the admitted fact was that its value was then $60.50 per share or a total value of $4,537.50. If in November 1942 Mr. Kast had been entitled to receive shares of stock from the fund, he would have received 146 shares of common stock of no par value. After the execution of the stipulation in 1942, and before Mr. Kast received any shares of stock from the Profit Sharing Fund, in October 1945, Sears Roebuck & Company split its stock by calling in the old shares and issuing new shares at a ratio of four new shares for one old. Mr. Kast continued with Sears Roebuck until January 31, 1949 when he retired at age sixty and received from the Profit Sharing Fund the number of new shares of no par value common stock equal to the sum to his credit in the fund. The shares then had a value of $37.875 per share or $2840.63 for seventy-five shares and a value of $11,362.50 for 300

shares and Mr. Kast tendered seventy-five of the shares in fulfillment of his obligation under the stipulation. Mrs. Kast refused to accept the tendered seventy-five shares and instituted this action for a declaratory judgment that under paragraph eight she was entitled to 300 shares of the new stock together with the accrued dividends. The trial court found for the respondent husband and gave his twenty-four requested findings of fact and conclusions of law. These findings included, [377] among other things, a finding of the stock split and the respective values above set forth. They included a finding that paragraph eight of the stipulation was complete upon its face and unambiguous and that parol evidence was not admissible in explanation or in interpretation of the language. In addition, the findings expressed the view that the parol evidence, if admitted, would not prove that the stipulation was ambiguous.

The appellant contends now, as she did in the trial court, that a subsequent event, or extraneous circumstance, the action of a third party, changed the stipulated situation and created a latent ambiguity authorizing the admission of extrinsic evidence in explanation and interpretation of the intent and meaning of the parties with respect to the subject matter of their agreement. The respondent contends that the contract is complete and unambiguous; that a contract "to transfer * * * 75 shares of stock * * * if and when said stock is received by defendant" from a specified source may not be read to mean that the transferee is entitled to 300 shares of stock. It is insisted by the respondent that the basis for the latent ambiguity rule is that on attempted application to the subject matter of the contract (here the shares of stock) the language is shown to be equally applicable to two things—usually two things in existence when the contract was executed. Williams v. Ashurst Oil, Land & Development Co., 144 Cal. 619, 78 Pac. 28. There is no disagreement between the parties as to the general rules relating to latent ambiguities and the admission of parol evidence (32 C. J. S., Sec. 961, pp. 915-920; 20 Am. Jur., Sec. 1157, p. 1010; State ex rel. Morrison Inv. Co. v. Trimble, 301 Mo. 146, 256 S. W. 171), the disagreement is whether the rule applies to the facts of this case. When appropriate the rule applies to contracts involving the sale and transfer of shares of corporate stock as it does to other contracts. 18 C. J. S., Sec. 403, p. 947.

It is indeed arguable from one point of view that the language of paragraph eight is unambiguous and that seventy-five shares of stock may not be read to mean three hundred shares of stock. The facts and circumstances of Zohrlaut v. Mengelberg, 144 Wis. 564, 124 N. W. 247, 128 N. W. 975; 148 Wis. 592, 134 N. W. 1135, 148 N. W. 314 (finally affirmed by an equally divided court) are not identical with the facts of this case—there had been no stock split in that case—but the language there used was held

to be unambiguous. The respondent's argument overlooks the fact that "shares of stock" or "seventy-five shares of stock" may not always be and remain the same thing or have the same meaning at different times. From the viewpoint of both of these parties the contract could have been so drawn that there could have been no question as to its meaning or proper interpretation. Even "shares of stock" is not a phrase with but one inexorable meaning. " 'Shares' are the units into which the shareholders' rights to participate in the control of the corporation, in its surplus or profits, or in the distribution of its assets, are divided." Mo. R. S. A., Sec. 4997.2(f); Laws Mo. 1943, p. 410. It has been pointed out that a stock dividend "is no more than a change in the paper evidences of the proportionate interests of the respective stockholders in the corporate assets, the share of a stockholder just before the stock dividend being represented by his proportionate interest in the capital assets, plus surplus and cumulative earnings, and after the stock dividends by his proportionate share in the capital increase by the diversion of assets to it from surplus or accumulated earning accounts, and in the remaining surplus or undivided earnings, if any, reduced by the amount so diverted." Annotation 162 A. L. R. 1169; Adams v. Conqueror Trust Co., 358 Mo. 763, 217 S. W. (2) 476. In Feore v. Avent, 4 Ala. A. 551, 58 So. 727, the contract stated, "I hereby agree to buy the stock of (the seller) in the Merchants' & Marine Bank * * * twenty shares" for a specified sum, and it appeared that there were two kinds of shares, the bank having issued originally $25,000 in stock divided into shares of $50.00 each and having subsequently, before the making of the [378] contract, increased its capital stock to $75,000 by giving the original shareholders a stock dividend of 100 per cent and selling the remainder of the new stock,—it was held that parol evidence was admissible to show whether the parties contracted with reference to the old shares or the new, as there was a latent ambiguity in the contract as applied to the subject matter. It was also pointed out in that case that each share of the original issue represented an undivided interest in the corporation, and that doubling the shares without adding anything to the assets which they represented made each share, although of the same face value, worth intrinsically one-half of what the original share was worth. Annotation 75 A. L. R. 1166. There is no reason for the inapplicability of the latent ambiguity rule to a subsequent change as to the subject matter of the contract when by reason of the change the subject is not plainly "spelled out" in the contract.

The respondent urges that this interpretation ignores and violates the additional language of the stipulation "if and when said stock is received by defendant from the Profit Sharing Fund of said Sears Roebuck and Company." It is said that by this language the

parties fixed the time of performance—and that at that time there were not two possible subject matters of the contract, but only one, shares received from the fund and only that date, when Mr. Kast retired in 1949, may be considered in identifying the subject matter of the contract. But when the stipulation was executed in 1942 Mr. Kast had then been with the company thirteen years and the only way the maximum benefits could be realized from the profit sharing fund was for him to remain with the company, as he did, until his retirement age sixty in 1949, and not withdraw from the fund until that time. Obviously, that was the principal purpose of that clause of the agreement and the reason for postponing Mrs. Kast's right to the possession of the stipulated stock, a reason and purpose for his benefit and accommodation. In the rules and regulations of the profit sharing fund one of its stated purposes is "that the fund will furnish to those depositors who remain in the employ of the Company * * * until they reach the age when they retire from active service, a sum to provide for them in part thereafter; and that even those who do not remain until retirement will have accumulated a substantial sum. In order to carry out this important purpose of the Fund, withdrawals prior to retirement have always been restricted, and, as is logical, will continue to be restricted."

The "Savings and Profit Sharing Pension Fund" of Sears, Roebuck and Company is administered by trustees. Employees and the company contribute to the fund and the first purpose stated is to permit employees "to share in the profits" of the company. The trustees hold the legal title to the fund and its investments but the beneficial interest in the fund is in the participating employees. In November 1942, when the stipulation was executed, Mr. Kast had to his credit in the fund deposits or sums equal to 146 shares of the then existing stock of the value of $60.50 a share. Prior to the execution of the stipulation, on October 6, 1942, he wrote to Mrs. Kast and stated that he sought a property settlement "entirely fair to both" and with the "intention to give you as much as I possibly can." He said, "The Profit Sharing Fund, as you well know, cannot be touched by me or anyone else and if the case goes to court you will receive none of this." In connection with the letter he made a ten paragraphed "offer." As to the stock, the offer said, "Upon retiring from Sears, Roebuck and Co. at age sixty, I agree to transfer to you seventy-five (75) shares of Sears, Roebuck and Co. stock when I receive it from the Profit Sharing Fund (the present market value of seventy-five (75) shares of stock is Four Thousand, Two Hundred Fifty Dollars ($4,250.00)." On October 22, 1945 Sears, Roebuck & Company split its stock, four new shares for one old share. In April 1949 the new shares had a value of $37.875 per share making a value as to seventy-five of the new shares

630

of $1060.00 when contrasted with the $4250.00 value of the old shares. We have set forth in the beginning the substance of the entire stipulation and it is a fair inference from the entire agreement that the settlement ''entirely [379] fair to both'' was approximately one half in value of their then existing assets, the most valuable of which was the credit of 146 shares of stock in the Profit Sharing Fund. The agreement then made, in 1942, established her right to the stock and only postponed, for his accommodation, her right to receive it and she is entitled to the stock as split, 300 shares for her original seventy-five, as the split likewise inured to his benefit as to the remaining shares.

■ In addition to the stock split, in her petition Mrs. Kast also asked for ''the dividends accrued thereon,'' and she proved the dividend record of Sears, Roebuck & Company from 1942 to 1948. The trial court found ''That there is no evidence to support plaintiff's claims to any dividends on any Sears, Roebuck and Co. Stock, but that under the law and the facts, dividends earned on any stock held for defendant's account by the Trustees of the aforesaid Fund during the period after November 24, 1942 and before January 31, 1949 became a part of the general fund, and upon defendant's withdrawal from the Fund became his property.'' When this cause was previously presented to this court the appellant did not mention the subject of dividends in her statement, brief or argument and she was deemed to have abandoned any error in the court's ruling as to dividends. Petty v. Kansas City Public Service Co., 355 Mo. 824, 198 S. W. (2) 684. When the cause was re-argued she again made the claim and contended that the court had erred in not declaring her entitled to accrued cash dividends. But, as the court found, there was no evidence, extrinsic or otherwise, as to dividends except the fact of Sears Roebuck's dividend record during the intervening years and the mere fact that the time for performance was postponed solely for the respondent's benefit does not alter the fact of lack of proof. In the absence of proof, as the trial court found, the cash dividends became a part of the general fund to the credit of Mr. Kast in the Profit Sharing Fund.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment in conformity with this opinion. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.