INTERTHERM, INC., Plaintiff-Appellant,

v.

CORONET IMPERIAL CORPORATION, Defendant-Respondent.

No. 37452.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Oct. 11, 1977.

Motion for Rehearing and/or Transfer Denied Nov. 14, 1977.

Application to Transfer Denied Dec. 19, 1977.

Isaac E. Young, Maplewood, Sylvan H. Robinson, Clayton, for plaintiff-appellant.

Rodney Weiss, Don R. Sherman, Rosenberg, Weiss, Goffstein, Kraus & Seigel, Clayton, for defendant-respondent.

KELLY, Judge.

In this contract action the appellant sought damages in the sum of $43,797.96 and the respondent counterclaimed seeking $18,421.00 allegedly due and owing to it for merchandise delivered to the appellant under the terms of the contract but not paid for. The cause was tried to the trial court without a jury and judgment was entered against the appellant on its cause of action and for the respondent on its counterclaim in the sum prayed for, i. e. $18,421.00, together with interest thereon at the rate of 6% per annum from May 5, 1970 and its costs. Appellant appealed. We affirm.

Respondent (hereinafter Coronet) is a corporation which manufactures dishwasher units primarily for the residential home building, apartment and condominium market. Appellant (hereinafter Intertherm) is a corporation which is engaged in the business of supplying various items to the mobile home industry. On October 1, 1969, these parties entered into an agreement prepared by Coronet's sales manager, Mr. Schultz, whereby Coronet granted to Intertherm exclusive rights to sell in the United States and Canada to the Factory Built and Mobile Home Industry and Recreational Equipment Industries a built-in dishwasher it manufactured. In consideration for this exclusive right of sale, Intertherm agreed to purchase from Coronet, at an agreed upon price per unit, 1500 built-in dishwasher units within 60 days of the date on which the agreement was executed. Paragraph 7 of the agreement provided that either party could terminate the agreement, with or without cause, upon written notice mailed or delivered to the other party to the agreement within 120 days of the effective date of termination. Paragraph 8 also provided that upon termination of the agreement Intertherm had the right, after inspection by Coronet, to return Intertherm's inventory of Coronet Dishwasher Units "which in Coronet's sole judgment, (were) acceptable as salable and do not entail any additional cost whatsoever to Coronet."

The parties entered upon the performance of the agreement but when sales did not proceed as Intertherm expected, a letter dated June 17, 1970, was sent to Coronet notifying it that Intertherm was exercising its right to terminate the agreement. On November 5, 1970 and again on December 4, 1970, Intertherm requested that Coronet inform it where to return the dishwasher units it had on hand. Coronet replied by letter of December 9, 1970, that the units were not returnable, but did not advise Intertherm why this was so. Fred Martin, Vice-President in charge of sales for Intertherm, inquired why the dishwasher units were not returnable and was told because the Coronet label had been replaced by the Intertherm label and Coronet would incur some additional costs removing those labels.

On December 29, 1970, Intertherm instituted this litigation resulting in an unfavorable judgment.

On appeal, although Intertherm in its Points Relied On portion of its brief raises two Points and numerous sub-points, reduced to their simpler allegations of error they are, that the judgment of the trial court is erroneous and should therefore be reversed and a judgment entered in its favor on its cause of action and against Coronet on its counterclaim because it is based on erroneous (1) findings of fact and (2) conclusions of law.

Review of this court tried case is governed by the standards enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976) and the judgment of the

trial court must be sustained unless the reviewing court finds that the judgment is (1) unsupported by substantial evidence, (2) is against the weight of the evidence, (3) is an erroneous declaration of the law, or (4) is an erroneous application of the law. Appellate courts are further warned that they should exercise the power to set aside a decree or judgment of the trial court on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong.

The bone of contention between the parties is their respective rights and duties under the terms of paragraph eight of the agreement. Intertherm contends that inherent in the phraseology of this paragraph is the term "*damaged* dishwasher units" and that Coronet, upon termination of the contract under paragraph 7 of the agreement, was duty bound to accept the return of all dishwasher units in Intertherm's inventory except those which were damaged. According to Intertherm, the terms "after inspection" in this paragraph are of significance, because they would not be necessary to the contract unless they were put into the contract by the drafter of the contract, Mr. Schultz, of Coronet, so that Coronet could inspect the dishwashers prior to their return to ascertain whether they were damaged.

On appeal, Intertherm attacks the trial court's Findings of Facts 5, 6, 7, 8 and 9. These are:

"5. That the agreement of October 1, 1969, provided for termination by either party upon the giving of 120 days written notice, and further provided that Intertherm could return to Coronet those dishwashers purchased from Coronet which, in Coronet's sole judgment, were acceptable as saleable and which would not entail any additional cost to Coronet.

"6. That on June 17, 1970, Intertherm terminated the agreement and attempted to return to Coronet 1305 dishwashers out of the original 1500 dishwashers purchased; that Coronet refused to accept the return of such dishwashers; and that Coronet acted reasonably and in good faith in refusing to accept the return of such dishwashers.

"7. That it was not necessary, nor was Coronet required, to inspect the 1305 dishwashers in order to make a determination that the dishwashers were not saleable and would have entailed additional cost to it.

"8. That the dishwashers were not readily marketable and were not saleable as such and the acceptance by Coronet of the 1305 dishwashers would have entailed additional cost to Coronet.

"9. That under the terms of the agreement of October 1, 1969, Coronet was neither obligated to, nor required to, accept the return of the 1305 dishwashers."

The attacks against each of these findings of fact by the trial court are couched in essentially the same terms and would either insert into the terms of the agreement the words "undamaged," or they comprise arguments that there was no evidence to support the finding that Coronet acted in good faith in refusing to accept return of the dishwashers. Objection is made to the use of the term "marketable" in Finding No. 8 because, Intertherm contends, there is no evidence to support this finding and the term is found nowhere within the contract itself, so that in making this finding the trial court "rewrote a new and different contract and misconstrued and destroyed the intent of the parties."

In support of its interpretation of paragraph 8 that the word "damaged" must be read into the agreement, Intertherm at trial offered the testimony of its national sales manager in 1969, William Atteridge, who testified that in the Fall of 1969, he was approached by E. J. Schultz, Coronet's sales manager at that time, relative to the feasibility of Intertherm merchandising Coronet's dishwashers in the mobile home field. A number of meetings followed and culminated in the execution of the agreement of October 1, 1969. During these preliminary negotiations Mr. Atteridge discussed with Mr. Schultz Intertherm's right to return the merchandise it would purchase from Coronet for resale to the mobile home industry.

On the day the contract was executed, Mr. Schultz brought the contract to him at Intertherm's office and prior to signing it for Intertherm, Mr. Atteridge questioned Mr. Schultz about paragraph 8 of the agreement. Mr. Schultz "indicated that for some reason were we to bring back these units we would have to check them over for damage so that we would have to rework them, put new parts, in order to put them back out again, . . ." Mr. Atteridge executed the contract for Intertherm, but not before he made a handwritten change on it with respect to the terms of sale, i. e. "1% Discount Ten/30 day net," and both he and Mr. Schultz initialed this change.

Mr. Schultz did not testify at trial. Mr. Hilleman, Coronet's president, testified that Mr. Schultz was no longer in the employ of Coronet and that he did not know Mr. Schultz's whereabouts.

■ On the basis of this testimony Intertherm argues that inasmuch as Mr. Atteridge's credibility was unchallenged the trial court erred in completely disregarding it. In oral argument Intertherm's counsel conceded that in a court-tried case the trial judge, as the trier of the facts, may disbelieve any witness. The trial court in a court-tried case is the arbiter of the facts; it may believe or disbelieve oral evidence and the fact that the testimony is uncontradicted is not in any way decisive. *Miller v. Gayman,* 482 S.W.2d 414, 420 (Mo.1972); *Labor Discount Center, Inc. v. State Bank & Trust Company of Wellston,* 526 S.W.2d 407, 421[4] (Mo.App.1975). This argument is without merit.

Intertherm, in its own case, adduced evidence that its labels had been placed on the dishwashers in its inventory and which it wanted to return to Coronet. Fred Martin, Intertherm's Vice-President in charge of sales, testified that on December 21, 1970, he wrote a letter to Mr. Hilleman of Coronet to the effect that the units would be returned in the original cartons at no cost to Coronet, freight prepaid, and that Intertherm would take care of the labels. In his testimony, Mr. Hilleman enumerated the reasons why Coronet would not accept re-

turn of the dishwashers. These were, the quantity and the "configuration;" the latter the major reason and was occasioned by changes in local building and residential plumbing codes in some areas of the United States which would require tooling, engineering and design changes if the dishwashers were to be made salable. Without these changes the dishwashers could not be sold to the home building industry, he testified.

The term "salable" is defined in Webster's Third New International Dictionary (1971) as "1: Capable of being sold; fit to be sold; marketable, vendible." It is a term used in everyday conversations. In contending that this paragraph of the contract was ambiguous and that the term "salable" as employed by Coronet was intended to include all of those dishwashers except those dishwashers which were not salable because they were damaged, Intertherm, as the plaintiff in the trial court, assumed the burden of proof. The only evidence it adduced in support of this contention was the testimony of Mr. Atteridge and the trial court chose to disregard that evidence and there was no further evidence to support Intertherm's argument in this respect. We have already held that the trial court had the right to disregard Mr. Atteridge's testimony as to his understanding of the word and what Mr. Schultz had told him.

■ In interpreting paragraph 8 to ascertain the intent of the parties, the trial court, we believe, interpreted its terms in accord with the rule in Restatement of Contracts, Second § 229(a), Tentative Draft No. 9 (1973), that "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, "unlawful or of no effect". In doing so, the trial court concluded that the right of Intertherm to return the dishwashers it was unable to sell to the mobile home market was subject to a condition which, according to the terms of the agreement, was within Coronet's discretion so long as said discretion was exercised in good faith and not arbitrarily. There was, in our opinion,

substantial evidence to support the trial court's finding that Coronet acted reasonably and in good faith in refusing to accept the return of these dishwashers. We hold that there is no merit in Intertherm's attacks on Findings of Fact 5 and 6.

Intertherm's attack on Finding of Fact No. 7 of the trial court is essentially that the trial court has ignored the meaning of the express language of the contract and more specifically the meaning or significance of the words "after inspection by Coronet" by expanding the application of the language to the marketability of the dishwashers and to additional costs entailed in such marketing and by ignoring the uncontradicted testimony of Intertherm's witnesses. Once again Intertherm argues that the significance of the terms "after inspection by Coronet" means that "the parties agreed that the goods were saleable if they were undamaged." The fallacy of this argument is that the trial court did not ignore these words in the contract as is evident from a reading of the Finding. What the trial court did do was determine that "saleable" did not mean "undamaged," that Coronet could refuse to accept the return of any goods which were not salable, and under the circumstances of this case, no inspection was required to ascertain the salability of the merchandise. This right of inspection was incorporated in the agreement solely as a benefit for Coronet, and as such, it was waivable by Coronet, except when a waiver would affect Intertherm's rights. *Campbell v. Richards,* 352 Mo. 272, 176 S.W.2d 504, 505[1] (1944). The trial court concluded, correctly we think, that Coronet's waiver of its right to inspect did not adversely affect Intertherm's right of return where, as here, inspection was unnecessary for a determination of the "saleability" of the dishwashers.

Intertherm contends that the trial court in Finding of Fact No. 8, when it interpreted the word "saleable" to mean "marketable" although the contract itself did not contain the word "marketable," and the undisputed evidence was that the word "saleable" meant only "undamaged merchandise," rewrote a new and different contract for the parties.

We conclude that this argument is specious. The term "marketable" is defined in Webster's Third New International Dictionary (1971) as follows:

"*Marketable* 1: fit to be offered for sale in a market; being such as may be justly and lawfully sold or bought . . . 2: of or relating to buying or selling . . b: enjoying a high degree of liquidity."

The term "marketable" is, we believe, employed in the context of this Finding of the trial court as a synonym for the term "salable."

We have already disposed of Intertherm's argument with respect to evidence it contends was "undisputed" and need not repeat our comments on that subject further.

Intertherm's attack on Finding of Fact No. 9 is that there is no substantial evidence to support said finding and that it is against the weight of the evidence because it is based on erroneous findings and misconstructions embraced in Findings of Fact Nos. 5, 6, 7 and 8. Our disposition of Intertherm's attacks on those Findings of Fact likewise dispose of this contention and we hold it to be without merit.

Throughout its attack on Findings of Fact Nos. 5, 6 and 8 Intertherm relies on argument that the trial court erred in that it failed to construe the terms of the agreement against Coronet, whose agent prepared the document. Restatement of Contracts, Second § 232 states that a meaning which operates against the draftsman is preferred in choosing *among the reasonable meanings.* The application of this rule of construction and interpretation necessarily presupposes that there is more than one reasonable meaning for the term to be construed or interpreted. Comment 1 to this section in the Restatement further states that there is a sound rationale supporting the effect of the rule "(i)n cases of doubt . . . so long as other factors are not decisive."

What Intertherm seeks to do here is incorporate into the word salable, the adjec-

tive "undamaged." Had the trial court believed Intertherm's evidence it might have done so. However, it exercised its right to disbelieve that evidence and we do not find that in doing so it was guilty of error. To hold as Intertherm would have us do, we would have to direct that the trial court should have entered a judgment based upon evidence it disbelieved only because the contract was drafted by an agent of Coronet. This we will not do.

Turning now to Intertherm's contention that the judgment is based upon erroneous conclusions of law, the Conclusions under attack are Conclusions of Law Nos. 1, 2 and 4. These read:

"1. The Court finds that the agreement of October 1, 1969, and more specifically Paragraph 8 thereof, is clear and unambiguous, and that parol or extrinsic evidence may not be used to vary, alter, or contradict an unambiguous written contract.

"2. The Court finds that when the words found in a contract are plain and free from ambiguity, oral evidence of the intent of the parties should be excluded; nevertheless, the cause being tried without a jury, the Court allowed into evidence such oral or parol evidence. Having considered such evidence, the Court further finds that the intent of the parties was consistent with the express written terms of the contract.

"4. The Court finds that a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by the evidence of any prior agreement or of a contemporaneous oral agreement."

The initial attack on Conclusion of Law No. 1 is that under the common law in order to show the real intent of the parties, parol or extrinsic evidence was properly admissible regarding the prior and contemporaneous negotiations, discussions and understandings of the parties leading up to and attending the signing of the agreement as prepared and drafted. This attack on the Conclusion is moot because the parol evidence was admitted and considered by the trial court but found to be without sufficient probative value to support the plaintiff's case. The gist of Intertherm's complaint, as we deduce from argument on this Point, is not that the trial court did not permit the evidence to come in, but, rather, that the trial court chose to disbelieve it.

Intertherm does not contend that there is here present a patent ambiguity; it concedes that its evidence on this issue was admissible only to resolve a latent ambiguity. "Latent ambiguity" has been defined in Missouri as one which " . . . exists where a writing presents no ambiguity, on its face, but when it is sought to apply the words used to the subject matter, it is found that they do not correctly describe or clearly apply to it." *Meinhardt v. White,* 341 Mo. 446, 107 S.W.2d 1061, 1064 (1937); *Prestigiacamo v. American Equitable Assur. Co.,* 240 Mo.App. 839, 221 S.W.2d 217, 221[4] (1949). In *Hardy v. Matthews,* 38 Mo. 121, 124 (1886) our Supreme Court said that "(a) latent ambiguity is where you show that words apply equally to two different things or subject matters, and then evidence is admissible to show which of them was the thing or subject matter intended." "It is undoubtedly true that '(t)he most common form of latent ambiguity arises where an instrument contains a reference to a particular person or thing, and is thus apparently clear, but it is shown by extrinsic evidence that there are two or more persons or things to whom or to which the description might properly apply.'" 32A C.J.S. Evidence § 961 b(3), p. 430; *Hardin v. Ray,* 404 S.W.2d 764, 770 (Mo.App. 1966). While there are other circumstances where the latent ambiguity exception to the parol evidence rule may have a proper place, this is not one of them. See *Prestigiacamo v. American Equitable Assur. Co.,* supra; *Kast v. Kast,* 361 Mo. 623, 235 S.W.2d 375 (1951). The agreement under consideration plainly and unmistakably committed the return of the merchandise to those dishwashers which were salable. What Intertherm sought was to create an ambiguity where, in fact, none existed, and incorporate into the agreement the words

"undamaged and saleable dishwashers." The trial court was not guilty of error in finding that there was no latent ambiguity, nor in exercising its prerogative of disbelieving the testimony of Mr. Atteridge, which in fact, it did admit and consider.

With respect to Conclusion of Law No. 2, once again Intertherm relies on its charge that the trial court "deleted" from the contract the terms "after inspection" and ignored its parol evidence of intent of the parties. This is nothing more than a reiteration of its prior complaints and like them, is without merit.

Conclusion of Law No. 4 is in error, Intertherm claims, because its parol evidence did not contradict the agreement but was required to explain the real intent of the parties with respect to the meaning of paragraph 8 within the purview of § 400.2–202(b) RSMo.1969 and because the transaction constituted a "sale or return" under § 400.2–326 RSMo.1969.

In the argument on this point Intertherm once again contends that Mr. Atteridge's testimony regarding his discussions with Mr. Schultz explained the true intent of the parties and was evidence of consistent additional terms admissible under subparagraph (b) of § 400.2–202 RSMo.1969 and was, therefore, properly admissible. The trial court so ruled; but simply did not believe this testimony.

Intertherm relies on § 400.2–326 RSMo. 1969 for the proposition that this transaction is a "sale or return," because Intertherm's reticence to buy the merchandise was overcome only by the seller's agreement to take back the dishwashers in lieu of payment if Intertherm failed to resell them. Therefore, the argument proceeds, "without such a provision and without Schultz's explanation of the true meaning and real intent of the language he drafted and prepared in paragraph 8, the contract would never have been executed by Intertherm." For those reasons, Intertherm contends, Mr. Atteridge's uncontradicted testimony regarding Mr. Schultz's statements concerning the intent and meaning of the language should have been accepted by the trial court.

A "sale or return" is defined in § 400.2–326(1)(b) as a sale wherein delivered goods may be returned to the buyer even though they conform to the contract, *unless otherwise agreed*, where the goods are delivered to the buyer primarily for resale.

Intertherm has not cited to us, nor have we found anywhere in the Uniform Commercial Code, any prohibition against the setting of conditions whereby the right to return of merchandise, in a "sale or return" contract, to the seller might be limited. Even under Intertherm's construction of the contract Coronet would not be obligated to accept the return of any damaged dishwashers despite the fact that nowhere in the contract does the term "damaged" appear. Section 400.1–102(3) RSMo. 1969, specifically authorizes variation of the effect of the provisions of the Code with certain exceptions. We have here no circumstance which brings this agreement within one of the exceptions. Furthermore, § 400.1–102(4) and Comment 3 to said section clarify the phrase "unless otherwise agreed" as they appear in other sections of the Code, and are applicable here. "Unless otherwise agreed" was adopted as a drafting technique and emphasizes that not every set of facts will come within the four corners of any given rule. The phraseology of § 400.2–327, which describes special incidents of "sale or return" contracts, acknowledges that the option to return the whole or any commercial unit of the goods while in substantially their same condition might be varied by an agreement otherwise. We conclude that even in a "sale or return" contract the terms upon which a *return of* the goods must be accepted by the seller may be agreed upon by the parties so that the seller is not legally obligated to accept the return of all or a part of the commercial items which are the subject of the contract upon the termination of the contract unless they meet standards agreed upon between the parties to the contract. Intertherm's argument that the term "saleable" as used in paragraph 8 of the contract referred only to undamaged dishwashers is untenable, because acceptance of that interpretation of

the meaning of the term renders the entire contract clause superfluous in a "sale or return" contract. Section 400.2–327(2)(a) RSMo.1969 specifically provides that as a special incident to a "sale or return" contract "the option to return extends to . . . *the goods while in substantially their original condition.*" (Emphasis supplied). Damaged dishwashers hardly satisfy this condition for return of the merchandise. Therefore, Coronet's right to refuse to accept the return of the damaged dishwashers was already embodied within the terms of the contract as written as a special incident thereto.

There is no merit to this Point.

We affirm.

GUNN, P. J., and JOHN L. ANDERSON, Special Judge, concur.